COUNTRYSIDE CASUALTY COMPA-
NY, an Insurance Corporation,
Plaintiff-Appellant,

v.

Billy Don McCORMICK,
Defendant-Respondent.

No. 14441.

Missouri Court of Appeals,
Southern District,
Division Two.

Jan. 21, 1987.

John R. Fowlkes, Caruthersville, for plaintiff-appellant.

Michael R. Baker, Columbia, for defendant-respondent.

FLANIGAN, Judge.

Plaintiff Countryside Casualty Company brought this declaratory judgment action against defendant Billy Don McCormick, the father of Briah Dawn McCormick who was five years old when she was fatally injured on April 8, 1979, as a result of an automobile accident which occurred on that date. The accident took place near Steele in Pemiscot County. At the time of the accident Briah was a passenger in an uninsured vehicle operated by Ronald Sweat. Another passenger in that vehicle was Cathy McCormick Sweat, Briah's mother, who married Ronald Sweat after she divorced defendant.

The issue is whether defendant, by reason of Briah's death, is entitled to benefits under the "uninsured motorist insurance" provision of an automobile liability policy issued to him by plaintiff. Resolution of the issue depends, in turn, on whether Briah was "a relative" of Billy Don McCormick, who was the named insured.

As applicable here, the policy defined "relative" as "a person related to the named insured ... by blood ... and who is a resident of and actually living in the same household as the named insured...." The trial court, sitting without a jury, found that Briah was "a relative" and therefore was an insured under the uninsured motorist provision of the policy.

Plaintiff's sole point is that the trial court's finding that Briah "was a resident of and actually living in the same household as defendant father at the time of her death" was against the weight of the evidence, "in that Briah was within the legal custody and actually and physically (living?) with her mother at the time of the fatal accident and hence not an insured under the policy." Both sides have filed excellent briefs addressing plaintiff's point.

The evidence consisted of certain stipulated facts and the testimony of defendant Billy Don McCormick and his present wife Jackie Pace McCormick.

The marriage of defendant Billy Don McCormick and Cathy McCormick was dissolved by a decree of the Circuit Court of Dunklin County on July 23, 1975. By the terms of that decree Cathy McCormick was awarded custody of Briah, subject to the reasonable rights of visitation of Billy Don McCormick, who was ordered to pay $25 weekly as child support.

Billy Don McCormick married Jackie Pace on October 31, 1978. The record does not show the date of Cathy McCormick's marriage to Ronald Sweat but apparently it was "in late 1978."

Jackie Pace McCormick testified that on the date of the accident, April 8, 1979, Cathy and Ronald Sweat lived in Steele. They had previously lived in Blytheville, Arkansas. While they lived in Blytheville, Briah "came and spent time" in Billy Don McCormick's home. At that time Billy Don lived in Kennett with his parents. Billy Don moved away from his parents' home when he married Jackie.

Jackie testified: "I don't know how many times Briah came to our quarters since we have been married. Briah would spend the weekend and once, when we were first married, Briah spent a week with us. A few times during the summer (sic) when people wanted to take a vacation Briah would spend a few weeks with us while her mother was taking a vacation. Briah and her father got along quite well. They had a good relationship."

Billy Don testified that he had been living in Kennett since the middle of 1979 and prior to that had lived in various other locations in Kennett where his parents lived. Immediately after his divorce from Cathy, Cathy lived in Steele, about 25 miles from Kennett, and later moved to Blytheville until she married Ronald Sweat, at which time they moved back to Steele. "At the time of Briah's death my child support was fully paid up. During the time Cathy lived in Blytheville, Briah came very regularly to spend the night at my house. We were very prompt about our every other week intervals. Cathy and I had more or less the understanding that I would have alternate weekends. During Cathy's courtship with Ronnie, I took more control over Briah to give Cathy and him time to establish a relationship." He further testified that he had a two-bedroom home and that when Briah stayed with him Briah had her own bedroom.

McCormick also testified: "I feel that Briah was as much a part of mine (household?) as she was Cathy's and Briah was with me as much or more than she was with Cathy." He testified that Briah spent "as much time in my residence as she did in Cathy's residence."

The following testimony was elicited from McCormick:

"Q. Did Briah keep any permanent clothing at your house?

A. She had her own clothes, her own toys, things of that nature, that she kept in Kennett, Missouri, in my or my mother's possession, whichever place I had residence at. She had her own separate—there was no dragging back and forth. She had her own separate wardrobe.

Q. She didn't have to pack any things to bring with her for your weekend custody?

A. Just her favorite things she liked to sleep in or things she liked to play with. That's the only thing that was transacted."

One commentator has said:

"Separations and marriage dissolutions often pose difficult problems in regard to determining whether a child is still residing with a named insured for purposes of the uninsured motorist coverage. When the breakdown of the marital relationship has led to the establishment of separate residence for the spouses, judges generally view the determination of whether a child is a resident of the same household as the named insured as a question of fact.

. . . . .

When a separation is clearly permanent, the courts almost always examine the circumstances with a view to evaluating whether the nature of the relationship between the injured child and the non-resident parent at the time of the accident justifies an extension of coverage. The most significant factor in determining the residence of the child is a judicial determination awarding custody. Even when custody has been awarded, however, a child may still be deemed an insured under the other parent's insurance if the insured parent can show either (1) that there are periods of residence with both parents or (2) that the non-resident parent provides substantial support of the child and the home where the child resides. Evidence of either of these factors may be sufficient to warrant the determination that a child continues to be a resident of the insured parent's household."

Widiss, Uninsured and Underinsured Motorist Insurance, Second Ed., Vol. 1, § 4.13.

In some factual situations a child of separated or divorced parents has been held to be a resident, for insurance purposes, of the same household as the named insured-parent, although at least some of the time the child resided in the household of the other parent. *Wainscott v. Ossenkop,* 633 P.2d 237 (Alaska 1981); *Cal-Farm Insurance Company v. Boisseranc,* 151 Cal. App.2d 775, 312 P.2d 401 (1957); *Butler v. MFA Mut. Ins. Co.,* 356 So.2d 1129 (La. App.1978); *Fidelity General Insurance Company v. Ripley,* 228 So.2d 238 (La. App.1969); *Miller v. United States Fidelity and Guaranty Co.,* 127 N.J.Super. 37, 316 A.2d 51 (1974); *Allstate Insurance Company v. Luna,* 36 A.D.2d 622, 319 N.Y.S.2d 139 (1971); *Davis v. Md. Cas. Co.,* 76 N.C.App. 102, 331 S.E.2d 744 (1985); *Hartford Cas. Ins. Co. v. Phillips,* 575 S.W.2d 62 (Tex.Civ.App.1978). On the other hand, coverage has been denied in situations where the facts were insufficient to support a finding that the child was a member of the household of a named insured-parent. *Gulf American Fire & Cas. Co. v. Azar,* 364 So.2d 332 (Ala.Civ.App.1978); *Griffith v. Security Ins. Co. of Hartford,* 167 Conn. 450, 356 A.2d 94 (1975); *Cavalier Insurance Corp. v. Bailey,* 292 So.2d 67 (Fla.App.1974); *Kemp v. State Farm Fire & Cas. Co.,* 442 So.2d 642 (La.App.1983); *Bearden v. Rucker,* 418 So.2d 713 (La.App. 1982); *Ursin v. Oubre,* 343 So.2d 1189 (La. App.1977); *Chapman v. Allstate Insurance Company,* 306 So.2d 414 (La.App. 1975); *Pierce v. Aetna Cas. & Sur. Co.,* 29 Wash.App. 32, 627 P.2d 152 (1981); *Londre v. Cont. West. Ins. Co.,* 117 Wis.2d 54, 343 N.W.2d 128 (Wisc.App.1983).[1]

---

1. Provisions extending the benefits of an insurance policy to a relative of the named insured residing in the latter's or the same household are frequently found in liability insurance policies and in the no-fault or uninsured motorist provisions of automobile insurance policies. Cases dealing with liability insurance policies are the subject of an annotation in 93 A.L.R.3d 420. Cases involving a child of the named insured living with the named insured's former spouse or spouse having a separate residence are collected at § 6, p. 441. Cases dealing with no-fault or uninsured motorist provisions are the subject of an annotation in 96 A.L.R.3d 804. At § 3, p. 810 are cases involving a child of the named insured living with the named insured's former spouse or spouse having a separate residence.

Some of the foregoing authorities have stated that "resident" and "household" are not terms having an absolute definition. *Cal-Farm Insurance Company v. Boisseranc*, supra; *Miller v. United States Fidelity and Guaranty Co.*, supra; *Davis v. Md. Cas. Co.*, supra. In *Griffith v. Security Ins. Co. of Hartford*, supra, 356 A.2d at 97 the court said:

"Over the years, many courts have been faced with the similar problem of deciding whether on a given state of facts individual persons are members of a particular household and, in each case, the decision has depended upon the particular factual circumstances involved. These factual circumstances are so varied that the decisions themselves are of little precedential value."

In *Cobb v. State Sec. Ins. Co.*, 576 S.W.2d 726 (Mo. banc 1979), the court examined the question of whether an illegitimate child of the named insured qualified, under the uninsured motorist clause of an insurance policy, as a "relative" and as a member of the insured's "household." With regard to the latter term, the court said, at p. 738:

" 'Household' is a chameleon like word. The definition depends on the facts of each case. It is difficult to deduce any general principles. One theory examines the length of time the parties intended to remain in the home and whether the arrangement is permanent or temporary.... The other theory focuses on the functional character of the arrangement or whether the parties function as a family unit under one management....

Although for different purposes the meaning of the word may differ, 'household' is a word to describe a close relationship, varying in detail, where people live together as a family in a closely-knit group, usually because of a close relationship by blood, marriage or adoption and who deal with each other informally and not at arms length."

The question of residence is one of fact. *State ex rel. King v. Walsh*, 484 S.W.2d 641, 644[1] (Mo. banc 1972); *State ex rel.*

*Goldberg v. Hutson*, 655 S.W.2d 815[1] (Mo.App.1983). There are factors in the instant record which would tend to support a finding that Briah was not a resident of her father's household. Briah's parents were divorced and each had married another spouse. In the divorce decree Briah's mother had been awarded custody of Briah. The accident happened while Briah was with the mother, who was not the named insured, although this is a factor which is almost always present in both lines of cases.

On the other hand, the following factors lend support to the finding of the trial court: Briah was only five years old at the time of her death; her divorced parents were still living within 25 miles of each other although each was maintaining a separate household; the father had been awarded reasonable rights of visitation under the divorce decree and he was current in his payments of weekly child support for Briah; Briah spent some time in her father's home while the Sweats lived in Blytheville; Briah and her father had a good relationship and there was testimony that she spent "at least one full week, the weekends, a few weeks" in the household of her father; Briah came very regularly to spend the night at her father's house; she came at "every other week" intervals; Briah had her own bedroom at her father's house and Briah kept "permanent clothing" or a separate wardrobe at her father's house; Briah was with her father "as much or more than she was with [her mother]." Briah spent "as much time" in her father's residence as she did in her mother's residence.

■ Without expressing an opinion on the sufficiency of the foregoing factors, singly or in conjunction with some of the others, to support the finding of the trial court, this court holds that those factors in the aggregate justify the finding of the trial court that Briah was "a relative," as defined in the policy, and therefore was an insured under the uninsured motorist provision of the policy.

Plaintiff seeks to distinguish the instant policy definition of "relative" from that found in most, if not all, of the cases previously cited. Plaintiff's brief says:

"While some courts have indicated there may be a dual residency of children of divorced parents, it is absolutely clear that they cannot *actually live* in two households at the same time. Countryside avoided that concept by the express words of exclusion in the policy issued to McCormick." (Emphasis in original.)

The same argument was made, and rejected by this court, in *Clarkson v. MFA Mutual Insurance Company*, 413 S.W.2d 10 (Mo.App.1967). At pp. 12–13 this court said:

"[Insurer] says that the policy definition imposes conjunctive requirements that a relative must be not only (1) 'a resident of' the same household as the named insured but also (2) 'actually living in' that household. However, this apparent duality of requirement is one of language and grammar only, in that, as numerous authorities point out and opposing counsel in the instant case agree, the terms 'reside' and 'live' are synonymous. The former may be 'more formal' than the latter [*Luvall v. Luvall*, 228 Ky. 577, 15 S.W.2d 433], but the conjunctive use of both terms in the policy definition is simply repetitive and cumulative and adds nothing in meaning or effect. So, 'a resident of and actually living in' is the equivalent, in meaning and significance, of 'actually residing and living in' or, more simply put, of either 'actually residing in' or 'actually living in.' "

■ The instant record justified the trial court in finding that Briah was a resident of, and "actually living in," two separate households, that of her father and that of her mother. The father had been faithful in paying child support and in exercising, and indeed exceeding, his right of reasonable visitation. The frequent visits of Briah to the home of her father, where she had her own wardrobe and personal belongings in her own bedroom, were likely to be a "permanent arrangement." *Cobb v. State Sec. Ins. Co.*, supra. Briah and her father continued to function as a family unit, although a similar relationship existed between Briah and her mother. Briah and her father lived together, regularly although not continuously, as a family in a closely knit group and they dealt with each other informally and not at arm's length. *Cobb v. State Sec. Ins. Co.*, supra.

The policy did not require that Billy Don McCormick's residence be Briah's "sole" residence, or even her "principal" residence or her residence "most of the time." This court concludes that the finding of the trial court is not against the weight of the evidence and that plaintiff's point has no merit.

The judgment is affirmed.

PREWITT, P.J., disqualified.

HOGAN and MAUS, JJ., concur.