**James ELDER, Jr., Appellant,**

v.

**METROPOLITAN PROPERTY AND CASUALTY COMPANY, Respondent.**

**No. WD 46367.**

Missouri Court of Appeals, Western District.

Feb. 16, 1993.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 30, 1993.

Application to Transfer Denied May 25, 1993.

Murry A. Marks, St. Louis, for appellant.

Gerald Edward Roark, Jefferson City, for respondent.

Before LOWENSTEIN, C.J., and TURNAGE and HANNA, JJ.

HANNA, Judge.

The trial court sustained the defendant insurance company's motion for summary judgment and Mr. Elder has appealed. We affirm.

On September 27, 1990, James Elder, Jr. ("plaintiff") was a passenger in an automobile owned and operated by defendant Taggert, an uninsured motorist. Mr. Taggert was driving east on U.S. 54 in a high speed race with Mr. Roland. Mr. Taggert lost control and skidded off the highway, down the embankment into a grove of trees. Plaintiff was thrown from the car and suffered serious physical injury. At the time of the accident, Mr. Taggert was intoxicated. The question on appeal presents an interpretation of the automobile insurance policy of plaintiff's father.

Plaintiff filed a petition for damages in the Circuit Court of Cole County, Missouri, asserting a claim of personal injuries against defendant Taggert and a claim for uninsured motorist coverage against Metropolitan Property and Casualty Company ("Metropolitan" or "insurance company") claiming he was afforded uninsured motorist coverage under the policy of insurance issued to his father, Mr. James Elder, Sr., because he was a relative and a member of his father's household.

At the time of the accident, plaintiff was twenty years of age. He graduated from high school in May, prior to the September accident. Plaintiff lived with his mother from the date of her separation from his father in October 1988, and had not lived with his father during this period of approximately two and one half years. The parents' marriage was dissolved by the Circuit Court of Cole County on September 14, 1990, thirteen days before the automobile accident. The dissolution decree awarded custody of plaintiff to the mother. Plaintiff listed his mother's address as his residence on job applications and, with few exceptions, kept all of his personal property at his mother's address.

Plaintiff's mother testified that before the accident, plaintiff had purchased a car in the latter part of August 1990. The Missouri Department of Revenue's records reveal that plaintiff had purchased a 1971 Volkswagen and that it was registered in plaintiff's name. The Department of Revenue's records also show that plaintiff had purchased another 1971 Volkswagen on August 1, 1988, and that he was the record owner of that vehicle at the time of the automobile accident.

The record on the motion for summary judgment was supported by the depositions of plaintiff's mother and plaintiff, the certified records of the Department of Revenue, and a certified copy of Metropolitan's policy. There were no affidavits or other documents filed in opposition.

Rule 74.04 provides for the entry of a summary judgment when the movant is entitled to a judgment as a matter of law. Our review is "equivalent to a court tried or equity proceeding and if, as a matter of law, the judgment is sustainable on any theory, it must be affirmed." *McCready v. Southard,* 671 S.W.2d 385, 387 (Mo.App. 1984).

Section IV of the Metropolitan policy provides in relevant part:

Will pay bodily injury damages, caused by an accident arising out of the ownership, maintenance or use of an uninsured highway vehicle, which you (the insured) or a *relative* are legally entitled to collect from the owner or driver of an uninsured highway vehicle. (emphasis added).

"Relative" is defined in Section VI as: [A] person related to (the insured) by blood, marriage, or adoption *and who also resides in [the insured's] household.... Relative does not include any person* or the spouse of any person *who owns a private passenger automobile.* (emphasis added).

It is Metropolitan's position that the plaintiff had no coverage under the policy because plaintiff owned an automobile and he did not reside in his father's house at the time of the accident. Therefore, the insurance company argues that the policy

does not extend uninsured motorist coverage to the plaintiff. The plaintiff contends that the weight of legal authority would hold, under the facts of this case, that he was a "relative" under his father's uninsured motorist policy and that there is a factual dispute regarding whether he owned a vehicle at the time of the accident.

■ In his first point, plaintiff contends that being an unemancipated minor whose parents are separated and living apart at the time he is injured by an uninsured motorist, he should be considered a resident of his father's "household" and, therefore, a "relative" under his father's uninsured motorist policy, even though he is living with his mother at the time of the accident. Courts have dealt with this issue before and have stated "... the decision has depended on the particular factual circumstances of each case. These factual circumstances are so varied that the decisions themselves are of little precedential value." *Countryside Cas. Co. v. McCormick,* 722 S.W.2d 655, 658 (Mo.App.1987) (*quoting Griffith v. Security Ins. Co. of Hartford,* 167 Conn. 450, 356 A.2d 94, 97 (1975)).

The plaintiff urges an expanded interpretation of "relative" residing in one's household. The plaintiff relies on *Cobb v. State Security Ins. Co.,* 576 S.W.2d 726, 737 (Mo. banc 1979) and *Countryside,* 722 S.W.2d at 655, contending these two cases are authority for the reversal of the summary judgment ruling. He further argues that *Cobb,* began the trend toward a liberal interpretation of "household resident" in automobile liability policies.

In *Cobb,* the Supreme Court analyzed the question of whether an illegitimate child of the named insured qualified under the uninsured motorist clause as a "relative" and a member of the insured's "household." *Cobb,* 576 S.W.2d at 729. "Relative" is defined in the policy as a "relative of the named insured who is a resident of the same household." *Id.* at 730. Robert Cobb, the child's biological father, had purchased an automobile insurance policy which named him as the insured. Rhonda,

the illegitimate child, was killed by an uninsured motorist during the policy term. Even though Robert was not married to Rhonda's mother, for two and a half years before the automobile accident, he had lived with Rhonda and her mother, and had acknowledged and accepted Rhonda as his child and had supported and contributed to her well-being.

The court held that Rhonda was a "relative" within the meaning of the policy. She was connected with Robert, the named insured, by blood and she was a member of the insured's "household" within the meaning of the uninsured motorist coverage. *Id.* at 737. Acknowledging that it was difficult to formulate general principles, the *Cobb* court set forth two theories that the cases seem to follow: "One theory examines the length of time the parties intended to remain in the home and whether the arrangement is permanent or temporary ... [t]he other theory focuses on the functional character of the arrangement or whether the parties function as a family unit under one management." *Id.* at 738. The court defined "household" as describing "a close relationship, varying in detail, where people live together as a family in a closely-knit group, usually because of a close relationship by blood, marriage or adoption and who deal with each other informally and not at arms length." *Id.*

The plaintiff next points to *Countryside* which involved an interpretation of the language "who is a resident of and actually living in the same household as the name insured" contained in the insurance policy. *Countryside*, 722 S.W.2d at 656. Briah was five-years old when she was killed in an accident as a passenger in a car driven by an uninsured motorist. The father, Billy McCormick sought recovery for her death. Billy and Briah's biological mother, had been divorced and under the terms of the dissolution decree, the mother had custody, subject to reasonable visitation for the father. The father was ordered to pay weekly child support and at the time of his daughter's death was up-to-date. The court held that Briah was a "relative" of father/insured because her status was that of an unemancipated minor, that she lived in close proximity to her father's residence, that the father maintained a residence for the child, which included the child's own clothes and toys, and that there was evidence she spent more time in her father's home than with the mother.

In analyzing the facts, the *Countryside* court stated "[w]hen a separation is clearly permanent, the courts almost always examines the circumstances with a view to evaluating whether the nature of the relationship between the injured child and the nonresident parent at the time of the accident justifies an extension of coverage." *Id.* at 657. The most significant factor in determining the residence of a child is a judicial determination awarding custody. *Id.* There is also a presumption that a child's residence is that of his custodial parent. *American Family Mut. Ins. Co. v. Auto Club Inter–Insurance Exchange*, 757 S.W.2d 304, 306 (Mo.App.1988). Even though the mother has been awarded custody, a child may still be deemed an insured under the other parent's insurance if the insured (non-custodial) parent can show either: 1) that there are periods of residence with both parents, or 2) that the non-resident parent provides substantial support of the child and the home where the child resides. *Countryside*, 722 S.W.2d at 657. Either of these factors may be sufficient to warrant the determination that a child continues to be a resident of the insured parent's household. As a result, the *Countryside* court held that these facts were sufficient to make Briah a "relative" of her father's household for insurance coverage. *Id.* at 658.

The facts of the present case do not support a finding that the plaintiff was a resident of his father's household for purposes of insurance coverage. Of the factors set forth in both *Cobb* and *Countryside*, plaintiff fits few, if any of them. As mentioned earlier, the most significant factor in determining plaintiff's residence is the judicial determination of his custody, which was placed with the mother. Further, at the time of this action, plaintiff was twenty years of age, had graduated from high school, had not enrolled in any

courses of higher learning, his parents were divorced, he was living with his mother on a permanent basis and had never stayed at his father's residence in the two and a half years preceding the automobile accident. The father lived in California, Missouri with his mother in a house that was not large enough to accommodate another individual. He paid no child support[1] for his son and plaintiff spent very little time with his father and when he did it was only infrequently at the father's house. The son testified that he rarely, if ever, visited his father at his home which was a considerable distance from where the son actually resided.

■ Under no expanded or liberal definition of "household" or "relative" could the plaintiff be considered a member of his father's household. Unlike, Rhonda or Briah, the plaintiff was not a truly unemancipated individual. James Elder, Jr. was twenty years old and not enrolled in or attending a secondary school nor was he enrolled in or attending an institution of vocational or higher education. This strongly suggests that pursuant to § 452.-340 RSMo 1990, he was emancipated. The plaintiff and his father maintained a relationship with each other but they were not functioning as a single family unit. Viewing the foregoing factors, we hold that they do not justify the finding that the plaintiff was a "relative," as defined in this policy because he was not residing in his father's household. Residence is a matter of intention and depends on a person's physical location. *American Family*, 757 S.W.2d at 306.

The automobile policy also excludes a relative who is a member of the household and who owns his own "private passenger automobile." The plaintiff first disputes the factual basis for the trial court's finding that he owned an automobile at the time of the accident. There must be no genuine issue of material fact existing or a grant of summary judgment is barred.

*West v. Jacobs*, 790 S.W.2d 475, 479–80 (Mo.App.1990).

The plaintiff refers to his testimony where he stated that he never owned an automobile. In plaintiff's deposition testimony, he discussed his relationship with his father and in answer to whether the two of them got together at the father's residence or in town, he stated: "Some of the time here in town. It was difficult for me to travel in between here and California, Missouri, *at the time, considering I didn't have an automobile.*" (Emphasis added).

■ The plaintiff's testimony referred to a period of time covering many months other than the date of the automobile accident. It was not a statement sufficient to defeat the clear evidence provided by his mother and the Missouri Department of Revenue's records. The court properly found as a fact that plaintiff owned either one or two automobiles at the time of the accident. Mere doubt and speculation do not create a genuine issue of material fact. *Wilson v. Altruk Freight Systems, Inc.,* 820 S.W.2d 717, 720 (Mo.App.1991). If it were truly a contested issue the question could be easily resolved by the plaintiff's affidavit that he did not own an automobile at the time of the accident. The party contesting the motion must show that a genuine issue of fact does exist, not that it might exist. *Cavin v. Kasser,* 820 S.W.2d 647, 649 (Mo.App.1991).

Whether this restriction was one that may be imposed on persons insured was considered in *Famuliner v. Farmers Ins. Co.,* 619 S.W.2d 894 (Mo.App.1981). Famuliner was operating his vehicle when he had an accident with an uninsured motorist. At the time, he was a resident of his parents' home. Farmers paid Famuliner's claim pursuant to the uninsured motorist coverage on his vehicle but denied coverage of the uninsured claim on policies of the parents, also with Farmers. The court held that ownership of an automobile disqualifies a person from coverage by virtue of the plain language in the policy. This is

---

1. An award of child support accrued only if the plaintiff enrolled in college courses in the fall term of 1990, which did not occur.

an additional reason James Elder, Jr. is not insured under his father's omnibus coverage.

 Finally, the plaintiff advances an argument that even assuming, *arguendo* that he was not a resident of his father's household and that he owned a car at the time of the accident, the insurance provisions were void as against public policy. He contends *Halpin v. American Family Mut. Ins. Co.*, 823 S.W.2d 479 (Mo. banc 1992) holds that these exclusions or restrictions are void as against public policy and inconsistent with the motor vehicle financial responsibility law, § 303.010–303.370 RSMo 1986. That case allowed a lawsuit by two minor children, over the defendant's objection, against their mother for recovery of damages suffered in a car accident which was the result of the mother's negligence. *Id.* at 480. Plaintiff argues that the legislative intent of the financial responsibility law was to insure that no victim of another's negligence is left uncompensated for his or her loss. He argues that the defendant insurance company cannot avoid liability simply because plaintiff, "by virtue of his parents' separation, did not permanently reside in his father's/insured's household at the time of the accident." The same public policy argument is made with respect to his ownership of an automobile.

The public policy question was addressed in *Famuliner*. The case addressed the public policy arguments in relationship to § 379.203 RSMo 1978. The exact issue in *Famuliner* was whether it was against public policy if the insurance contract limits the scope of uninsured motorist coverage by a restrictive definition of persons insured under the policy, i.e., ownership of an automobile. *Id.* at 896. The court held that there is no authority to support the plaintiff's contention that coverage be mandatorily extended to him under his parent's policies as a matter of public policy for hazards associated with the operation of his own vehicle. *Id.* at 899.

In other states which mandate uninsured motorist coverage in all automobile liability policies, the results have been consistent when faced with this issue. It is well stated in *France v. Liberty Mutual Ins. Co.*, 380 So.2d 1155 (Fla.App.1980) where the court wrote:

> We decline to extend the public policy [plaintiff] urges so as to allow a member of a family to purchase one liability policy and claim total coverage thereunder for the entire family while vastly increasing the risk to his or her insurer by knowingly owning and operating a fleet of uninsured vehicles upon the highways.

*Id.* at 1156; *see also McCance v. Farmers Ins. Co.*, 783 S.W.2d 467, 469 (Mo.App. 1990); *Adams v. Julius*, 719 S.W.2d 94, 104 (Mo.App.1986).

In each of these cases, the court specifically found that the financial responsibility statute and public policy of this state did not mandate coverage as requested by the plaintiff.

 We acknowledge that uninsured motorist coverage is to be given a liberal interpretation, but coverage should not be created where there is none. *Harrison v. MFA Mut. Ins. Co.*, 607 S.W.2d 137, 147 (Mo. banc 1980). Although *Halpin* evaluated the public policy argument in its relationship to § 303.010 and *Famuliner* in relation to § 379.203, there is no substantive distinction, which plaintiff acknowledges. *Famuliner* stands for the proposition that public policy is not violated by the restrictive language of ownership of the plaintiff's own automobile and it is just as applicable to the requirement that the "relative" live in the insured's household. *Id.* at 899. The point is denied.

Judgment Affirmed.

All concur.