<u>UNPUBLISHED</u>

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

―――――――――――

No. 04-1408

―――――――――――

MATTHEW GODWIN; ANTHONY WILLIAM BURBANO,

Plaintiffs - Appellants,

versus

FARMERS NEW CENTURY INSURANCE COMPANY,

Defendant - Appellee,

and

ZURICH INSURANCE COMPANY,

Defendant.

―――――――――――

Appeal from the United States District Court for the District of
Maryland, at Greenbelt.  Alexander Williams, Jr.,  District Judge.
(CA-03-119-AW))

―――――――――――

Argued:  December 2, 2004        Decided:  February 18, 2005

―――――――――――

Before WILKINSON, Circuit Judge, W. Craig BROADWATER, United States
District Judge for the Northern District of West Virginia, sitting
by designation, and Norman K. MOON, United States District Judge
for the Western District of Virginia, sitting by designation.

―――――――――――

Affirmed by unpublished per curiam opinion.

―――――――――――

Michael J. Schreyer, DONAHUE, SEIDMAN & SCHREYER, L.L.C., Waldorf,
Maryland, for Appellants.  Andrew Janquitto, MUDD, HARRISON &
BURCH, Towson, Maryland, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

PER CURIAM:

Dolores Burbano lives in Lusby, Maryland. Her husband, William Burbano, has two children from his previous marriage to Laurie Burbano. One of these children, Anthony Burbano, spends most of his time with Laurie, his legal custodian, in her Waldorf, Maryland residence. One night, Anthony was involved in a car accident after finishing work in nearby LaPlata, Maryland. In this diversity action, we must determine whether Dolores's auto insurance policy covers this accident. We find that it does not. We therefore affirm the judgment of the district court granting summary judgment to the insurance company that issued the policy.

## I.

William and Laurie Burbano had two children, Anthony and Kyle. After the couple separated in 1994, the youngsters stayed with their mother in the family home in Waldorf. In late 1994, William moved in with Dolores and her two children in Lusby.

A separation agreement, executed by William and Laurie in February 1995, provided that Laurie would continue to have physical custody of Anthony and Kyle. The parents agreed to share legal custody, however, and they determined that the children would spend sixty-three days a year with their father. A divorce decree in 1996 recognized the award of primary physical custody to Laurie

3

but, following the separation agreement, granted William joint legal custody with visitation rights.

For several years, Anthony and his younger brother Kyle visited their father's abode every other weekend. Anthony testified that he also spent a week each summer, and another week at Christmas or Easter, with William and Dolores. In March 2001, fourteen year-old Kyle moved in with his father. Anthony's visitation practices also changed at this point. Unlike his brother, however, Anthony began to spend less time with his father. At trial, Laurie stated that from March to October 2001 Anthony visited William and Dolores "a minimum of once a month, a maximum of twice a month." After testifying that his stays diminished after March 2001, Anthony contradictorily claimed to have visited his father a "[c]ouple times a month" during this period. Anthony then added confusingly that these visits were "[n]ot every other weekend." William, for his part, could recall "[p]ossibly on[e]" overnight stay from March to October 2001.

On October 19, 2001, Anthony was involved in a car accident while driving a friend's vehicle. Another companion, Matthew Godwin, suffered serious injuries in the collision, which led to the amputation of his leg. The insurer of the car offered to pay $300,000 to Godwin. Laurie's auto insurance company also agreed to pay him $100,000. In this action, Godwin is seeking proceeds from a third policy -- one that Dolores secured from Farmers New Century

4

Insurance Company ("Farmers") in September 2001. This policy covers, inter alia, any "person related to [Dolores and William] by blood, marriage or adoption who is a resident of [their] household." Godwin sued for a declaratory judgment in state court, seeking payment for his injuries from Farmers. Farmers removed to district court, which ordered Anthony realigned as a plaintiff.* After discovery, the district court granted summary judgment to the insurance company. The district court found that Anthony was not a "resident" of Dolores and William's household at the time of the accident, as the policy required. Godwin could not therefore claim any payment from Farmers for the injuries he suffered while Anthony was driving. Godwin now seeks review of that decision.

## II.

We review grants of summary judgment de novo, construing the evidence in the light most favorable to the appellant. While reviewing summary judgment in a diversity case, we must apply the law of the district court's forum state, as announced by its highest court. Klaxon Co. v. Stentor Elec. Mfg. Co., Inc., 313 U.S. 487, 496 (1941); Erie R.R. Co. v. Tompkins, 304 U.S. 64, 79 (1938). Where the state's highest court has yet to decide a legal

---

*Because Farmers is not a Maryland corporation and both Godwin and Anthony are Maryland citizens, this realignment created complete diversity of citizenship, supporting subject matter jurisdiction under 28 U.S.C. § 1332 (2000).

5

question, we may look to its lower courts for instruction. <u>Private Mortgage Inv. Servs., Inc. v. Hotel & Club Assocs., Inc.</u>, 296 F.3d 308, 312 (4th Cir. 2002).

## A.

Appellant's first ground for appeal is that the district court misapplied Maryland law.

The parties agree that, for insurance purposes, the residency of children like Anthony is an issue the Maryland Court of Appeals has yet to decide. The parties also agree that the court would likely adopt a totality of the circumstances test were it faced with this issue. The district court expressly concluded as much and considered several circumstances bearing on Anthony's residency. It noted that Anthony's visits to his father's abode had become sporadic by the time the accident occurred. The court also observed that Anthony had no exclusively assigned sleeping place in William and Dolores's house and the possessions he kept there had dwindled to a shelf of clothes and assorted recreational equipment. Further, William did not claim Anthony as a dependent on his 2001 tax return, and Anthony himself listed his mother's address on his driver's license and other official forms. The district court acknowledged that parents such as William who maintain "close relationships" with their children after a divorce "are to be commended." But, applying the totality test to the

6

foregoing facts, the district court found that Anthony was not a resident of his father's household at the time of the accident.

Appellant does not claim that the district court relied on erroneous facts or inadvertently ignored evidence in reaching this finding. Nor does Godwin claim that any of the considerations informing this finding were legally irrelevant to the residency issue at hand. Instead, appellant asks us to reexamine the totality of the circumstances and overturn the conclusion that, based on these circumstances, Anthony was not residing in his father's household when the accident occurred.

To this end, appellant cites several cases which, applying the totality test to similar facts, find residency for insurance purposes where the district court found none. But in some of these cases, the policy holder and the party claiming coverage maintained closer ties than Anthony and his father. In Countryside Casualty Company v. McCormick, 722 S.W.2d 655 (Mo. Ct. App. 1987), for instance, a child was deemed a resident of her non-custodial parent's household. But the court made this determination only after finding that the child visited the parent's house according to a regular schedule and that the child spent "as much or more" time there than at her custodial parent's house. Id. at 658. The child also maintained a bedroom in both abodes. Id. None of these circumstances is present here. Rather, Anthony spent the lion's share of his time at his mother's house, visited his father

7

sporadically, and had no exclusively assigned living space in William and Dolores's home.

In other cases that appellant cites, the contract at issue varied from that which Dolores signed with Farmers. In Forbes v. Harleysville Mutual Insurance Company, 589 A.2d 944 (Md. 1991), for instance, the court found that a woman was still a resident of the family home that she had departed after marital problems. But the woman was named as an operator on the policy document at issue and, as such, the court found an intention to secure joint coverage when the couple took out the contract. Id. at 952. Here, by contrast, Dolores recorded only herself and William when asked to list "residents & dependents (licensed or not) and regular operators" on the insurance application. Further, the court in Forbes took pains to emphasize that separation following marital difficulties is often temporary and warned that it would be "unreasonable" to conclude that departing spouse in every such instance "automatically becomes uninsured." Id. at 951. Here, by contrast, nobody pretends that Anthony was on a temporary sojourn from his father's household when the accident occurred. The child remained with his mother when his father left to establish a new homestead, and the filial ties only weakened thereafter.

These cases, and others that apply the totality test to find residency where the district court found none, were distinguished by the district court on the facts. See Snedegar v. Midwestern

8

Indem. Co., 541 N.E.2d 90, 95 (Ohio Ct. App. 1998) (child stayed with father "one to two days a week," permanently stored belongings there, and received correspondence and phone calls); Coriasco v. Hutchcraft, 615 N.E.2d 64, 66 (Ill. App. Ct. 1993) (child made "regularly scheduled visits" with non-custodial father); Davis v. Maryland Cas. Co., 331 S.E.2d 744, 745 (N.C. Ct. App. 1985) (child visited non-custodial father for several overnight stays each week and stored extensive possessions with him). Appellant's continued reliance on these precedents, in the face of such distinction, is no more availing than it was below. And the case Godwin says the district court "overlooked" is not only distinguishable but also reaches the opposite conclusion on the residency issue. See Aetna Life & Cas. Co. v. Carrera, 577 A.2d 980, 985-86 (R.I. 1990) (denying coverage even though son "generally used his mother's [mailing] address" as his own). Carrera does not therefore alter the district court's residency analysis.

B.

Appellant's second ground for appeal is that, even if the district court did not err in anticipating Maryland law, it did disregard provisions of Dolores's policy in reaching its residency conclusion.

Appellant concedes that the policy's "definitions" and "liability coverage" sections do not speak to residency beyond

9

their description of a covered "family member" as "a resident" of William and Dolores's household who is "related to [them] by blood, marriage or adoption."  And appellant does not allege any other textual basis for liability in the policy's coverage provisions. Instead, appellant argues that a section of the policy's "surcharge, discount and rate classification disclosure plan" for Maryland implies that the contract was meant to cover accidents such as this.  Maryland law requires Farmers to disclose information on rate classifications and surcharges to reveal the company's method for calculating premiums.  See Md. Code Ann., Ins. § 11-214(a) (Michie 2003 Rep. Vol.) (requiring disclosure by auto insurers of "the policyholder's rate classifications" and "a summary" of the insurer's state-approved "surcharge plan").

Godwin points in particular to a rate discount for "youthful drivers" that is listed in the premium disclosure documentation. This discount requires, inter alia, that the "youth must be living at home unless attending and residing at a college or university," with two exceptions for independently insured youths, neither of which is applicable here.  The disclosure documentation goes on to note that

> [a] youthful driver attending school away from home is considered a member of the insured's household unless the youth has established permanent residence elsewhere.  A youthful driver attending school over 250 miles from home, without custody of the automobile, shall be considered a member of the insured's household.

10

Godwin asserts that the preceding rate provisions "[manifest] the intention to include in the broad definition of an 'insured,' drivers who are ages 16-24 and not living at home." Stripped of its vagueness, this argument reduces to a claim that, because a rate discount is available to "youthful drivers" who are "away from home," disputes regarding the residency of youthful drivers should generally be resolved in favor of coverage. Quite apart from whether rate information can vary a policy's coverage in such a manner, appellant's argument simply misstates the gist of the premium discount at issue. To qualify for this discount, the "youthful driver" who is not independently insured must be "attending and residing at a college or university" or "living at home." The latter possibility is foreclosed by our discussion of residency above. And Godwin never pretends that the 17 year-old Anthony was "attending and residing at a college or university" at the time of the accident. We agree with appellant that a "contract should not be interpreted in a manner that disregards a meaningful part of the agreement." But a party must at least fall within the "meaningful part['s]" explicit terms before invoking it in the course of a dispute.

Godwin's argument from the text of the policy is no more meritorious than his argument from Maryland law. Like the state law argument, therefore, the textual contention cannot result in recovery here.

11

III.

The judgment of the district court is

AFFIRMED.