[No. 8062–8–I.   Division One.   April 20, 1981.]

JOHN B. PIERCE, *Appellant,* v. AETNA CASUALTY AND SURETY COMPANY, *Respondent.*

---

*Perkins, Coie, Stone, Olsen & Williams* and *Charles C. Gordon,* for appellant.

*Lee, Smart, Cook, Biehl & Martin* and *David L. Martin,* for respondent.

SWANSON, J.—This appeal concerns a declaratory judg-

ment action to construe an automobile insurance policy. The sole issue is the interpretation of the phrase "while residents of the same household" contained in the policy's uninsured motorist coverage. The facts of the case are undisputed. On cross motions for summary judgment, the trial court granted Aetna Casualty and Surety Company's (Aetna) motion and denied Pierce's motion. Pierce appealed. A brief discussion of the facts is necessary to an understanding of the issue.

Aetna issued an automobile liability policy to The Boeing Company to provide coverage for certain Boeing executives who had company cars. As treasurer of The Boeing Company, John B. Pierce had a company car and was a designated insured under the policy. The policy's uninsured motorist coverage provided for additional insureds with the following language:

II. PERSONS INSURED
Each of the following is an insured under this insurance to the extent set forth below:
(a) the named insured and any designated insured and while residents of the same household, the spouse and relatives of either . . .

On March 19, 1977, Charles David Pierce, John B. Pierce's 17–year–old son, was severely injured while a passenger in a car which struck a utility pole. Neither the car driver nor the car owner had insurance. None of the Pierces had any ownership interest in the car. On behalf of his son, John B. Pierce claimed uninsured motorists coverage under the Aetna policy. He contended that his son was a proper insured and beneficiary under the policy's terms for persons insured if relatives "while residents of the same household." Aetna, however, denied coverage, asserting Charles David Pierce was not a resident of the same household as his father, John B. Pierce, on the date of the accident on the basis of the following facts.

John B. Pierce and his wife, Dolores Cooper Pierce, were divorced in April 1971. Dolores received custody of the couple's four children, including Charles David Pierce. She

and the children continued to live in the family residence at 4003 Trenton S.W. in Seattle while John B. Pierce moved to an apartment on Fairview and later to a house on Blaine. Although John B. Pierce retained ownership of the family residence under the property settlement, he maintained it for the use of his ex–wife and four children. While he did keep some personal property there, he did not retain a separate room in the house. He did, however, use the Trenton residence as his voting address and received stock dividends there. For the first 2 years following the divorce, he frequently stayed overnight at the Trenton residence because he and his wife were then seriously considering reconciliation; but after 1973, he would stay overnight only on holidays. Sometimes the children would visit him at the Blaine house, but they continued to live at the Trenton house. Thus, at the time of the accident, John B. Pierce lived in his house on Blaine while Charles David Pierce lived with his mother in the house on Trenton.

In this appeal, Pierce contends the phrase "residents of the same household" is an ambiguous term, which must be interpreted according to the intent of the insured and not of the insurer. Because John B. Pierce and his son, Charles David Pierce, intended to be bound together in a household of financial, emotional, and physical ties despite the divorce, he asserts they were residents of the same household at the time of the accident. On the other hand, Aetna argues the phrase "residents of the same household" is unambiguous as applied to the undisputed facts of this case. Because any serious opportunity for reconciliation between Mr. and Mrs. Pierce had ended in 1973 long before the accident in 1977, the Pierces maintained separate households and were in fact not residents of the same household. Charles David Pierce resided with his mother, who had legal custody of him. He did not reside with his father. Therefore, Aetna contends John B. Pierce and Charles David Pierce were not residents of the same household.

Insurance policies are construed in accordance with

the general rules applicable to all other contracts. *Farmers Ins. Co. v. Miller,* 87 Wn.2d 70, 73, 549 P.2d 9 (1976); *Jeffries v. General Cas. Co. of America,* 46 Wn.2d 543, 283 P.2d 128 (1955). In construing an insurance contract, the court must interpret it according to the intent of the parties. *Ames v. Baker,* 68 Wn.2d 713, 415 P.2d 74 (1966). Under the guise of construction, however, the court cannot rule out of the contract language which the parties have placed into it, revise the contract under the theory of construing it, create a new contract for the parties, or impose obligations which never before existed. *Evans v. Metropolitan Life Ins. Co.,* 26 Wn.2d 594, 174 P.2d 961 (1946). The terms of the policy must be understood in their plain, ordinary, and popular sense. *Thompson v. Ezzell,* 61 Wn.2d 685, 379 P.2d 983 (1963). Nevertheless, the court will construe an inclusionary clause liberally to provide coverage for those who can be embraced within the terms of the clause. *Hawaiian Ins. & Guar. Co. v. Federated Am. Ins. Co.,* 13 Wn. App. 7, 20, 534 P.2d 48, 93 A.L.R.3d 407 (1975). *See Dickson v. United States Fidelity & Guar. Co.,* 77 Wn.2d 785, 466 P.2d 515 (1970).

■ The cases which have discussed the interpretation of the phrase "residents of the same household" as used in insurance policies are legion. *See generally* Annot., 93 A.L.R.3d 420 (1979) (liability insurance); Annot., 96 A.L.R.3d 804 (1979) (no–fault and uninsured motorist provisions). The phrase "residents of the same household" has no fixed meaning but varies according to the circumstances of the case. *American Universal Ins. Co. v. Thompson,* 62 Wn.2d 595, 599, 384 P.2d 367 (1963) (applying California law); *Cal–Farm Ins. Co. v. Boisseranc,* 151 Cal. App. 2d 775, 312 P.2d 401 (1957). In general terms, dictionaries define "resident" as one who dwells or has an abode in a place for a continued length of time and "household" as those who dwell under the same roof to compose a family living together. *See Consumers United Ins. Co. v. Johnson,* 26 Wn. App. 795, 801, 614 P.2d 657 (1980) (using dictionary definitions to construe a driver limitation endorsement). A

person does not, however, have to remain physically within the household. As long as the person has some regular, permanent attachment to the family household, most courts find that person remains part of the household. Consequently, children away at school in temporary residences with the intention of returning to the family household remain residents of the parental household. *See, e.g., Crossett v. St. Louis Fire & Marine Ins. Co.,* 289 Ala. 598, 269 So. 2d 869 (1972); *American States Ins. Co. v. Walker,* 26 Utah 2d 161, 486 P.2d 1042 (1971). Children in military service who have not acquired a separate domicile also remain residents of the parental household. *See, e.g., American Universal Ins. Co. v. Thompson, supra; Handal v. American Farmers Mut. Cas. Co.,* 79 Wis. 2d 67, 255 N.W.2d 903 (1977) (applying Iowa law). *But see Compton v. Sims,* 96 Idaho 762, 536 P.2d 1112 (1975). Spouses remain residents of the same household even though one spouse has left the family residence if the departing spouse had the intention of returning or retained the hope of effecting a reconciliation. *See, e.g., Hawaiian Ins. & Guar. Co. v. Federated Am. Ins. Co., supra; Lumbermens Mut. Cas. Co. v. Continental Cas. Co.,* 387 P.2d 104 (Alaska 1963); *Holloway v. Farmers Ins. Exch.,* 252 Ark. 899–C, 481 S.W.2d 328 (1972); *See also Neidhoefer v. Automobile Ins. Co.,* 182 F.2d 269, 273 (7th Cir. 1950) (intent of the departing family member important, and perhaps controlling, factor). Further, children and spouses living within the same curtilage or on the same land are residents of the same household. *See, e.g., Workman v. Detroit Auto. Inter–Ins. Exch.,* 404 Mich. 477, 274 N.W.2d 373 (1979) (married daughter living in trailer on land owned by father–in–law near his house); *Mazzilli v. Accident & Cas. Ins. Co.,* 35 N.J. 1, 170 A.2d 800 (1961) (separated spouse living 150 feet away but on same tract of land). *But see Drake v. Donegal Mut. Ins. Co.,* 422 F. Supp. 272 (W.D. Pa. 1976) (mother living in separate apartment in multiunit building owned by daughter not resident of daughter's household even though daughter also lived in building). Thus, the fol-

lowing are relevant factors in determining who is a resident of the same household: (1) the intent of the departing person, (2) the formality or informality of the relationship between the person and the members of the household, (3) the relative propinquity of the dwelling units, and (4) the existence of another place of lodging. *Workman v. Detroit Auto. Inter–Ins. Exch., supra* at 479, 274 N.W.2d at 379.

■ For the present case, the criteria listed above indicate John B. Pierce and Charles David Pierce were not residents of the same household. After 1973, there was little hope for reconciliation of the Pierce marriage so there was no intent to maintain a single household. John and Dolores instead maintained separate, distinct households a considerable distance apart. While John continued to visit Dolores and the children, he was no longer integrated into the daily routine of the Trenton Street household. Nevertheless, we must consider a narrower factual pattern than those found in the cases considered above. Here, the issue becomes whether "residents of the same household" in an uninsured motorist provision includes the child of divorced parents. Other jurisdictions have reached conflicting results, depending upon the facts of the particular case.

In *Herbst v. Hansen,* 46 Wis. 2d 697, 176 N.W.2d 380 (1970), the court found a son living with his mother was still a "resident of the same household" as his insured father under an uninsured motorist provision even though the father lived separately. The mother had custody of the son under a decree of legal separation. There was no absolute divorce, and the parents had seriously considered the possibility of reconciliation. Because the father's absence was possibly only temporary, he remained a resident of the same household as his wife and son. If the wife had obtained an absolute divorce, however, the court stated it would have found the father's absence permanent so that the son and father could not have remained residents of the same household.

Under similar circumstances, the court in *Fidelity Gen.*

*Ins. Co. v. Ripley,* 228 So. 2d 238 (La. App. 1969), *cert. denied,* 230 So. 2d 94 (La. 1970), held an injured son living with his mother remained a "resident of the same household" as his separated father. The parents had lived separately for 3 years. Although there was no court order to determine custody, the son was living with his mother. Still, the son often stayed with his father. Under Louisiana law, the son was also legally domiciled with his father.

In another Louisiana case, the court found a fatally injured daughter living with her mother remained a "resident of the same household" as her father. *Butler v. MFA Mut. Ins. Co.,* 356 So. 2d 1129 (La. App.), *cert. denied,* 358 So. 2d 641 (La. 1978). The parents were divorced. The mother had custody of the daughter. However, after the divorce, the father purchased a home and moved his ex–wife and children into it. He made the mortgage payments on this house, maintained the yard, and occasionally stayed overnight when his ex–wife was out of town. Because he spent a substantial amount of time at the house and exercised such dominion and control over the property, the court found it was his legal residence even though he spent most nights in a rented room at another address.

Once again construing the phrase "residents of the same household" in an uninsured motorist provision, the court in *Hartford Cas. Ins. Co. v. Phillips,* 575 S.W.2d 62 (Tex. Civ. App. 1978), found a son living with his father remained a resident of his mother's household. The parents were divorced. Although the mother had legal custody, the son lived with his father under the parents' agreement. The son, however, regularly spent time with his mother and kept some clothes there.

The court in *Allstate Ins. Co. v. Luna,* 36 App. Div. 2d 622, 319 N.Y.S.2d 139 (1971), found a son living with his mother remained a resident of his father's household. Here, however, the mother unilaterally removed herself and the minor son from the marital home. The mother's action did not alter the unemancipated son's status as a resident of the father's household. But the mother through her inten-

tional voluntary departure was no longer a resident of the father's household.

The facts of the present case are distinguishable from those in the above cases finding coverage under uninsured motorist provisions containing the phrase "residents of the same household." While the parents in *Herbst v. Hansen, supra,* and *Fidelity Gen. Ins. Co. v. Ripley, supra,* were only separated, the Pierces had been divorced for nearly 6 years at the time of the accident in 1977. Further, the Pierces indicated little hope for reconciliation after 1973. John B. Pierce did not spend substantial time at the Trenton Street residence after 1973. While the facts in *Butler v. MFA Mut. Ins. Co., supra,* are similar, John B. Pierce did not exercise nearly the degree of dominion and control over the Trenton Street residence as the father did in *Butler.* John B. Pierce established and maintained a separate legal residence on Blaine. Although he visited the Trenton Street household, he was not an integrated member of it.

Even cases construing the same terms in other types of insurance policies to find coverage are distinguishable. In interpreting a liability insurance policy, the court in *Cal–Farm Ins. Co. v. Boisseranc, supra,* held a 6–year–old son living with his mother was a resident of his father's household. The parents were divorced. An initial joint custody decree was modified to give the mother custody and the father visitation rights. Nevertheless, the son had a continuing relationship with his father, spending three–fourths of his time with his father. In the instant case, John B. Pierce did not spend such substantial time with his son. Their visits together were infrequent and irregular.

There is also authority for treating a child of divorced parents who regularly spends every weekend in his father's house and every weekday in his mother's house as a resident of both households. *See Miller v. United States Fidelity & Guar. Co.,* 127 N.J. Super. 37, 316 A.2d 51 (1974) (9–year–old son resident of father's household for purposes of homeowner's liability policy). But because Charles David Pierce did not regularly stay with his father

at either residence, we do not reach the issue of joint residency.

As the previous recitals indicate, the facts in the present case bear a closer similarity to those in cases which do not find the child to be a resident of the separately living parent's household. In *Gulf Am. Fire & Cas. Co. v. Azar,* 364 So. 2d 332 (Ala. Civ. App.), *cert. denied,* 364 So. 2d 335 (Ala. 1978), the parents were divorced, and the 17–year–old son lived with his mother, who had custody. The son and mother continued to live in the family house, which the parents jointly owned. The couple intended to sell the house as soon as possible, but the mother had the right to occupy the house until the sale. Although the father and son did visit with each other, the court held they did not reside in the same household so that the father's uninsured motorist provision did not cover the son's involvement in an accident.

Similarly, the parents were divorced for 4 years when the 15–year–old son was injured in an uninsured accident in *Griffith v. Security Ins. Co.,* 167 Conn. 450, 356 A.2d 94 (1975). Under his uninsured motorist coverage, the father claimed the son should be covered as a "resident of the same household" even though the son was living with the mother, who had custody. The father retained a close relationship with his son, often visited, stayed overnight frequently at the mother's home, and even kept clothes there. Despite this close relationship, the court applied a dictionary definition of "household" to deny coverage of the son. The court emphasized that the father lived at a separate residence and that the son testified he lived with his mother.

Finally, in *Chapman v. Allstate Ins. Co.,* 306 So. 2d 414 (La. App. 1975), the parents were also divorced for a number of years while the mother had custody of the son. At the time of the son's death in an automobile accident, he intended to move to his father's house, but he had transferred no belongings there. In fact, the son had never been to his father's house. In denying the father's claim that his

son was included under an uninsured motorist provision of the father's insurance policy, the court held the son legally resided with his mother and was not a resident of his father's household. *Accord, Ursin v. Oubre,* 343 So. 2d 1189 (La. App. 1977) (construing a nonowned auto provision).

We are persuaded that under the facts of the present case, John B. Pierce and Charles David Pierce were not residents of the same household. John B. Pierce maintained a separate, distinct household. Charles David Pierce lived as a member of his mother's household. Even Charles David's intention to move to his father's house at some time in the future could not make him a resident of his father's household. While a person might acquire more than one household by dividing time between two localities on a regular basis, *Schehen v. North–West Ins. Co.,* 258 Or. 559, 560–61, 484 P.2d 836, 838 (1971), John B. Pierce did not use the Trenton Street house on a regular basis. He was not a resident of the Trenton Street household. Therefore, we conclude that John B. Pierce and Charles David Pierce were not "residents of the same household" under the terms of John B. Pierce's uninsured motorist coverage with Aetna.

The judgment is affirmed.

JAMES, C.J., and WILLIAMS, J., concur.

Reconsideration denied May 19, 1981.

Review denied by Supreme Court September 3, 1981.