[No. 13361-3-III.   Division Three.   November 8, 1994.]

NATIONAL GENERAL INSURANCE COMPANY, *Respondent*,
v. PEGGY SUE SHEROUSE, *Appellant*.

*Joseph A. Blumel III* and *Backman, Blumel & Reed*, for appellant.

*Michael L. Wolfe* and *Paine, Hamblen, Coffin, Brooke & Miller*, for respondent.

SWEENEY, A.C.J. — While a passenger in a car operated by her mother, Peggy Sue Sherouse was injured in a 1-car rollover accident. The accident was the result of her mother's negligence. Her mother's insurer, National General Insurance Company, paid Ms. Sherouse the liability limit of $100,000. She then demanded underinsured motorists' (UIM) benefits under the same policy. The parties each moved for summary judgment; the trial court granted summary judgment to National General. We affirm.

## FACTS

Mary Davis, Ms. Sherouse's mother, lived in a house in Spokane until she married Bruce Davis in 1981 and moved to Bridgeport, 100 miles away. Ms. Davis retained the Spokane house as property to bequeath to her children. From 1981 through 1989, she rented the house to several tenants.

Ms. Sherouse moved into her mother's house in October 1989. She paid no rent; her mother and stepfather paid the monthly mortgage, some of the utility bills, and telephone bills. Mr. and Ms. Davis came to Spokane almost monthly to visit Ms. Sherouse and her three children, Ms. Davis's younger daughter, who was institutionalized, and to shop. They usually stayed in a basement bedroom of the Spokane house during these visits.[1]

On January 24, 1991, Ms. Davis drove Ms. Sherouse to a court hearing in Davenport. During the trip, the car slid on black ice and rolled off of the road. Ms. Sherouse was injured when she was ejected from the passenger seat.

---

[1]Mr. and Ms. Davis visited Spokane monthly even before Ms. Sherouse moved into the Spokane house. They stayed at a motel during these visits.

At the time of the accident, the vehicle was insured with National General. The policy provided liability coverage of $100,000 and underinsured motorists' coverage in a like amount. National General paid the liability limits to Ms. Sherouse, and she released her mother and stepfather. She then demanded UIM benefits.

The policy's UIM section provided that National General "will pay damages which an 'insured' is legally entitled to recover from the owner or operator of an 'underinsured motor vehicle' because of . . . 'Bodily injury' sustained by an 'insured' and caused by an accident". "Insured" is defined, in part, as the policyholder or any *"family member"*. (Italics ours.) "[F]amily member" in turn includes "a person related to you by blood, marriage or adoption who is a *resident of your household."* (Italics ours.) "Underinsured motor vehicle" does not include any vehicle to which the liability coverage applies.

On January 26, 1993, National General filed a declaratory judgment action claiming that Ms. Sherouse had no right to underinsured motorist benefits. Ms. Sherouse moved for summary judgment arguing she was entitled to underinsured motorist benefits as a named insured. National General filed a Cross Motion for Summary Judgment. The court granted National General's motion.

## DISCUSSION

The sole issue on appeal is whether Ms. Sherouse is a resident of Ms. Davis's household and thereby qualifies as a "family member" for purposes of underinsured motorist coverage.

■ ■ The interpretation of an insurance contract is a question of law; summary judgment is proper unless terms of the contract are ambiguous and contradictory evidence is introduced to clarify the ambiguity. *Ryan v. Harrison*, 40 Wn. App. 395, 397, 699 P.2d 230, *review denied*, 104 Wn.2d 1003 (1985).

■ National General's policy provides coverage, including UIM coverage, for "named insureds", which includes the policyholder and family members. The policy defines "family member" as "a person related to you by blood, marriage or

adoption *who is a resident of your household*". (Italics ours.) Ms. Sherouse argues that the phrase "resident of your household" is ambiguous and as a result should be construed strictly against National General. *Ryan*, at 398. Strict construction of exclusions, however, is merely an aid to understanding the intention of the parties to the insurance contract. *Aetna Ins. Co. v. Kent*, 85 Wn.2d 942, 946, 540 P.2d 1383 (1975).

■■ The phrase "resident of the same household" as used in insurance policies has been interpreted in several Washington cases. *See, e.g., General Motors Acceptance Corp. v. Grange Ins. Ass'n*, 38 Wn. App. 6, 684 P.2d 744 (son living temporarily in apartment 15 miles from family farm found to be resident of father's household), *review denied*, 102 Wn.2d 1015 (1984); *Pierce v. Aetna Cas. & Sur. Co.*, 29 Wn. App. 32, 627 P.2d 152 (son living with mother found not to be a resident of his father's household), *review denied*, 95 Wn.2d 1032 (1981). The words have no precise meaning and vary according to the circumstances of each case. *General Motors*, at 10; *Pierce*, at 36. Generally, "resident" connotes a living arrangement with some degree of permanence, while "household" means residents "who dwell under the same roof and compose a family". *General Motors*, at 10 (citing *Consumers United Ins. Co. v. Johnson*, 26 Wn. App. 795, 801, 614 P.2d 657, *review denied*, 94 Wn.2d 1022 (1980)). A person does not have to remain physically within the household, however, so long as the person has some regular, permanent attachment to the family household. *Pierce*, at 36-37.

■ In *Pierce*, the court outlined four factors for consideration in determining who is a resident of the same household: "(1) the intent of the departing person, (2) the formality or informality of the relationship between the person and the members of the household, (3) the relative propinquity of the dwelling units, and (4) the existence of another place of lodging." *Pierce*, at 38. An important element is whether the "departing person" intends to eat and sleep away from the residence permanently or temporarily with the intention of returning. *See General Motors*, at 10-11.

In *Pierce*, a divorced couple maintained separate residences. The husband retained ownership of a family home where his ex-wife and their children resided. Although he did not have a separate room in that home, he stayed there occasionally, kept some personal property there, used it as his voting address and had stock dividends mailed to the address. *Pierce*, at 35. In affirming a summary judgment in favor of the insurer, the court held that an injured son was not a resident of his father's household for the purposes of UIM coverage because the family home was not his father's "residence". The father did not intend to live in the household permanently and in fact maintained a separate, distinct household many miles away. Further, he was not "integrated into the daily routine" of the ex-wife's household. *Pierce*, at 38.

Ms. Sherouse contends her mother's household includes the Spokane house. A person can be a resident of two permanent households only if time is divided between the two on a regular basis. *Pierce*, at 42. Ms. Davis's monthly weekend visits are not sufficient to constitute maintenance of the Spokane house as a second "Davis" household. Ms. Davis had no intention of moving back to Spokane, except in the unlikely event she and her husband were to separate and her mother, who lives in Bridgeport, were to die. A substantial distance separates the Spokane home and the Bridgeport home. Ms. Sherouse and her children maintain their household in the Spokane house independent of her mother. Ms. Davis's living arrangements satisfy none of the four factors set out in *Pierce*. We agree with the trial court's conclusion that, as a matter of law, Ms. Sherouse was not a resident of her mother's household.

Affirmed.

MUNSON and SCHULTHEIS, JJ., concur.

Review denied at 126 Wn.2d 1009 (1995).