[No. 36021-3-I.   Division One.   February 18, 1997.]

CHERYL WOLF, ET AL., *Appellants,* v. LEAGUE
GENERAL INSURANCE COMPANY, *Respondent.*

*Thomas E. Stuen* and *Raas, Johnsen & Stuen, P.S.*; and *Dennis P. Murphy* and *Anderson & Connell*, for appellants.

*William R. Hickman, Marilee C. Erickson,* and *Reed McClure,* for respondent.

GROSSE, J. — Cheryl Wolf was on vacation with her daughter, Christina Wolf, when the car Christina was driving went off the road.[1] Christina's parents, Cheryl and David Wolf, are divorced but have joint custody of their daughter. Cheryl Wolf and Carmel Drewes, a passenger in the auto at the time,[2] filed claims against League General Insurance Company (League), the insurer of David Wolf, claiming Christina was covered under his policy. The claims were denied and this litigation ensued. League's policy provides that insured persons under its policy include relatives who, in turn, are persons living in the insured's household. We hold that, given the language of this policy, and in the circumstances of this case where divorced parents have joint custody with the child living with both as an integrated family member, the child must be considered as living in both households for purposes of insurance coverage.

Christina's parents were divorced in 1989. Since then they have shared joint custody of their daughters Christina and Lisa. David is an active participant in his children's lives. He purchased a home close to the one he once shared with his family, and furnished a bedroom for his daughters there. The visitation schedule was such that the daughters stayed with their father every other weekend and for a minimum of five weeks in the summer. The evidence showed that as the girls got older, although most of their clothes went back and forth, there were furnishings, hair

---

[1] At the time of the accident, Christina was not yet 16 years old but possessed a valid learner's driving permit. There is no dispute that the accident was caused by the sole negligence of Christina.

[2] At the time of the filing of the action, Carmel Drewes was a minor and her representation was through a guardian.

dryers, cosmetics, shampoo, and other possessions that remained at David's house.

The parenting plan filed with the dissolution decree indicated that for the purposes of jurisdiction only, Christina was a resident of her mother's house. The plan also stated the parents recognized the children's welfare could best be served by "our mutual cooperation as partners in parenting and by *each of us* providing a home in which the children are loved and to which the children belong: their mother's house and their father's house." (Emphasis added.)

At the time of the accident, David's insurance policy was in force, as was Cheryl's policy. David's policy provided that the insurer "will pay damages for which an insured person is legally liable because of bodily injury . . . resulting from the . . . use of an automobile." Under the policy, "insured persons" included "relatives." The policy section at issue defines "relative" as:

> a person living in your [David's] household and related to you by blood, marriage or adoption, including a ward or foster child.

Cheryl was insured by Safeco Insurance Company (Safeco). Cheryl, Carmel, and David, individually and as the personal representative of Lisa Wolf's estate, made claims against Christina to Safeco and League. Safeco interpleaded its entire policy limits and filed an action asking the court to divide the proceeds among the claimants. Plaintiffs filed cross-claims against Christina. League refused to defend Christina or participate in the settlements claiming that Christina was not covered under her father's policy within the policy provision covering relatives "living in your household." After League refused to defend, Christina reached settlements with the plaintiffs. These settlements were not fully covered by the limits of Cheryl's policy.

In Safeco's action, the superior court approved the settlements, divided the Safeco policy proceeds, and

entered judgment against Christina for the remaining uncompensated damages suffered by Cheryl and Carmel. Judgment was entered against Christina in favor of Cheryl and Carmel.[3]

Cheryl and Carmel sought to compel League to indemnify Christina for the outstanding judgments. They sued not only for the coverage but for breach of contract and a violation of the Washington State Consumer Protection Act. They moved for summary judgment on the ground that, as a matter of law, Christina was an insured relative of David's household within the meaning of the League policy.

The trial court held that, as a matter of law, Christina was not living in her father's household at the time of the accident. The court set out its interpretation of the phrase "living with" and stated:

> But my interpretation of the document or the phrase "living with" in the document means that they have to be living with at the time, and it becomes very fact specific.

> I view it like this: If the parenting plan says, for example, "The son shall live with the mother Monday through Friday and shall live with the father on Saturday and Sunday," then it's very fact specific. And if the accident occurs on Wednesday, then the son is living with the mother. If it occurs on a Saturday or Sunday, then the son is living with the father, because it's very fact specific.

> The facts that I have in this case — and I think we all have to agree — is that Christina, who was driving the car, was living with the mother at the time, because this was the mother's vacation time with the child in which the child was with the mother. This wasn't a situation where the child was visiting the father for the weekend and the accident occurred during the father's weekend. If that were, in fact, the case, I would rule that the child was living with the father at the time.

---

[3]Settlement was for the sum of $150,000 to Carmel, net of all prior insurance recoveries, and for the sum of $160,000, again net of all prior recoveries, to Cheryl as damages arising from the accident. As part of the approved settlement, Christina assigned her rights against League to Cheryl and Carmel.

So I can't say that she is living both places at the same time. I think when I view the language in the policy, I have to say the child is either living here or is living here; can't live both places at the same time.

We may have a problem if it occurred like on Friday while she was driving from one place to the other. Then I would really have a very difficult time. But here it is, from my standpoint, very fact specific.

. . . .

I have to go along with his [counsel for insurance company] interpretation; that is to say, "living with" is with whom she was living at the time. And because of the fact that this was the mother's summer visitation, the child was not living with the father at the time. And I'm going to say that she was living with the mother at the time, and then the League General Insurance Company doesn't have any responsibility.

The trial court entered an order granting summary judgment to League, dismissing Cheryl and Carmel's complaint. They appeal.[4]

There is no Washington case interpreting the *exact* phrase "living in your household" in regard to the children of divorced parents who maintain significant residential contacts with their children. However, there is a Washington case involving similar language.

■ In *State Farm Mut. Auto. Ins. Co. v. Johnson,*[5] this court construed policy language providing coverage to persons who were a "relative" and "lived with" the named

---

[4]The usual standard of review applies. *Schaaf v. Highfield,* 127 Wn.2d 17, 20-21, 896 P.2d 665 (1995). This court will engage in the same inquiry as the trial court. The interpretation of an insurance policy is a question of law. *Hess v. North Pacific Ins. Co.,* 122 Wn.2d 180, 186, 859 P.2d 586 (1993) (citing *Transcontinental Ins. Co. v. Washington Pub. Utils. Dists.' Util. Sys.,* 111 Wn.2d 452, 456, 760 P.2d 337 (1988)). Summary judgment is used to determine the extent of coverage where the applicability of certain policy language is at issue. In those cases in which the only real dispute relates to the legal effect of the insurance contract, summary judgment is proper. *Nichols v. CNA Ins. Cos.,* 57 Wn. App. 397, 399, 788 P.2d 594 (citing *Kelly v. Aetna Cas. & Sur. Co.,* 100 Wn.2d 401, 407, 670 P.2d 267 (1983)), *review denied,* 115 Wn.2d 1003 (1990).

[5]*State Farm Mut. Auto. Ins. Co. v. Johnson,* 72 Wn. App. 580, 871 P.2d 1066, *review denied,* 124 Wn.2d 1018 (1994).

insured. We held that the language provided coverage for a married son who was staying at his parents' home indefinitely while he arranged for work and for permanent living arrangements for he and his family that remained in Texas where they had resided for the previous two and one-half years. In *Johnson,* State Farm argued that "who lives with you" was synonymous with "resides with" or "resident member of the named insured's household." Therefore State Farm argued that Washington law required a permanent living arrangement which Johnson did not have. The court rejected this reasoning indicating that the terms "reside with" and "live with" are not synonymous. The *Johnson* court found those cases construing the term "living with" as being qualitatively different from "residing with," especially noting that the term "lives with" has no legal or technical meaning unlike the term "residing with." The *Johnson* court quoted a Delaware case with approval.[6] There the court discussed the difference between the terms "residing with" and "live with" and stated:

> Most uninsured motorists' policies described in the case law limit coverage to relatives "residing with" the named insured, or to "residents of the same household" as the named insured. In contrast, State Farm has here chosen a term, "live with", that unlike "residence" or "domicile" has no particular legal or technical significance and is of everyday ordinary use.

*Johnson,* 72 Wn. App. at 586 (quoting *Fisher,* at *3 (footnote and citations omitted)). The *Johnson* court discussed the policy language and found persuasive those cases that hold the term "lives with" in an insurance policy not to be synonymous with those using "residing with." Further the *Johnson* court found persuasive those cases holding the term "lives with," in the context of an insurance policy

---

[6]*See Fisher v. Novak,* No. CIV.A.88C-MY-21, 1990 WL 82159, at *2 (Del. Super. Ct. Mar. 20, 1990), *aff'd,* 599 A.2d 414 (Del. 1991).

such as the one here, not to be ambiguous.[7] "Specifically, the term 'lives with', as used in the policy, means living or dwelling in fact *whether or not permanently or continuously.*"[8]

In *Johnson*, the question before the court was whether Mr. Johnson was "living with" his father on the date of the accident. Whether Mr. Johnson also "lived with" someone else was not at issue. But contrary to the argument of League and the holding of the trial court, the *Johnson* case does not set forth a bright line rule that the person seeking coverage had to be spending the night at the home in order to be covered. What *Johnson* holds is that Mr. Johnson had a temporary living arrangement in his parents' home and it was the living arrangement, not the location of his last sleep, which determined coverage.

League asks this court to interpret the phrase "living in your household" as "living *primarily* in your household" or "*predominantly,*" or even as "who spent the previous night with you." But that is not the language used in the policy. Christina had a permanent room in her father's house where she stayed every other weekend and for a minimum of five weeks in the summer. Although most of her clothes were at her mother's house at the time of the accident, Christina had several permanent articles at David's house. The parenting plan supports the view that Christina could "live with," or "in," both households. League reads the *Johnson* case too broadly when it says the court held the person must be living with a parent "in fact" at the time of the accident and that only one policy can cover the child.

██ The test should not be one of with whom the child stayed the previous night, but rather whether the covered parent maintained a relationship demonstrated by the child living regularly with him or her such that the child

---

[7]*See Stoner v. State Farm Mut. Auto. Ins. Co.*, 780 F.2d 1414, 1417 (8th Cir. 1986).

[8]*Johnson*, 72 Wn. App. at 586 (citing *Stoner v. State Farm Mut. Auto. Ins. Co.*, 780 F.2d at 1417) (emphasis added and footnote omitted).

is integrated into the household. In *Londre by Long v. Continental W. Ins. Co.*,[9] a Wisconsin case cited by each party, the court determined that a child was *not* a member of both households because the child did not live with his father on a regular basis:

> In Wisconsin, both parents may share joint custody. The child could therefore possibly become a member of both parents' households for insurance purposes. It has also become common for the child to have a continuing relationship with the noncustodial parent through frequent and regular visitation, such that the child becomes an integrated member of both households. Thus, the question of whether [the son] was a resident of his noncustodial father's household must depend upon the particular factual circumstances.

*Londre by Long*, 343 N.W.2d at 131. That court went on to state its agreement that a child might acquire more than one residence under proper facts. We agree with this reasoning. The facts here point to Christina being an integrated member of her father's household, as well as that of her mother.

Given our holding that there is coverage, we must determine whether League is liable for the judgments entered against the insured minor driver (Christina), or for the prejudgment interest on the outstanding judgments. Resolution of what League owes depends upon its policy limits unless there is a determination that League acted in bad faith in refusing to defend or settle the claim.

■ ■ In the absence of bad faith, an insurer's liability for the amount of a judgment or settlement reached in the underlying action extends only to the policy limits. Our Supreme Court has rejected the minority rule that a policyholder can recover beyond the policy limits when an insurance company has committed a breach of its duty to

---

[9]*Londre by Long v. Continental W. Ins. Co.*, 117 Wis. 2d 54, 343 N.W.2d 128 (1983).

defend.[10] However, an insurer who unreasonably denies its defense obligation may be found to have acted in bad faith.[11] If bad faith is found, an insurer's liability may extend beyond its policy limits.[12] Bad faith refusal to defend requires a showing that the insurer's denial was unreasonable, frivolous, or unfounded.[13]

Remand to the superior court is required to determine (1) if there was bad faith on the part of League; (2) to determine if prejudgment interest is available,[14] and (3) to determine the amounts owed under the judgments given the policy limits[15] or full satisfaction of the judgment amounts if bad faith is determined.

Cheryl and Carmel also contend they should be awarded attorney fees and costs pursuant to *Olympic S.S. Co. v. Centennial Ins. Co.*, 117 Wn.2d 37, 811 P.2d 673 (1991), and or for a violation of the Consumer Protection Act. League contends that the *Olympic Steamship* case was improperly decided, and that fees should be awarded only when the specific facts and circumstances of *Olympic Steamship* are presented.

■ Our Supreme Court reaffirmed *Olympic Steamship* in *Estate of Jordan v. Hartford Accident & Indem. Co.*[16]

---

[10]*Greer v. Northwestern Nat'l Ins. Co.*, 109 Wn.2d 191, 743 P.2d 1244 (1987).

[11]*Industrial Indem. Co. of the Northwest, Inc. v. Kallevig*, 114 Wn.2d 907, 917, 792 P.2d 520 (1990).

[12]*Greer v. Northwestern Nat'l Ins. Co.*, 109 Wn.2d at 203 n.6.

[13]*Transcontinental Ins. Co. v. Utility Sys.*, 111 Wn.2d 452, 470-71, 760 P.2d 337 (1988).

[14]An award of prejudgment interest may be awarded if it is determined that the liability was for a sum certain. *See Hansen v. Rothaus*, 107 Wn.2d 468, 730 P.2d 662 (1986).

[15]The policy limits are technically not before this court as the policy limits page of the policy was inadvertently left out of the record.

[16]*Estate of Jordan v. Hartford Accident & Indem. Co.*, 120 Wn.2d 490, 844 P.2d 403 (1993).

*and Public Util. Dist. 1 v. International Ins. Co.*[17] In those cases, despite the absence of supplementary payments paragraphs, the court held that an award of attorney fees was proper. The court in *Estate of Jordan* reiterated its holding in *Olympic Steamship* that " 'an award of fees is required in any legal action where the insurer compels the insured to assume the burden of legal action, to obtain the full benefit of his insurance contract . . . .' "[18] Since these cases were decided, the central holding in *Olympic Steamship* was specifically reaffirmed in *McGreevy v. Oregon Mut. Ins. Co.*[19] Accordingly, an award of attorney fees in this case is proper. On remand the trial court shall determine the proper amount, including attorney fees attributable to this appeal.

We reverse and remand the case for actions consistent with this opinion.

COLEMAN and ELLINGTON, JJ., concur.

---

[17]*Public Util. Dist. 1 v. International Ins. Co.*, 124 Wn.2d 789, 881 P.2d 1020 (1994).

[18]*Estate of Jordan*, 120 Wn.2d at 508 (quoting *Olympic Steamship*, 117 Wn.2d at 53). *See also Gerken v. Mutual of Enumclaw Ins. Co.*, 74 Wn. App. 220, 229-30 & n.5, 872 P.2d 1108, *review denied*, 125 Wn.2d 1005 (1994).

[19]*McGreevy v. Oregon Mut. Ins. Co.*, 128 Wn.2d 26, 40, 904 P.2d 731 (1995).