[No. 39392-8-I.    Division One.    September 8, 1997.]

ESTATE OF SUSAN ADAMS, ET AL., *Appellants*, v.
GREAT AMERICAN INSURANCE COMPANIES, ET AL.,
*Respondents.*

*Samuel H. Pemberton, Jr.*, for appellants.
*I. Richard Lassman*, for respondents.

ELLINGTON, J. — In November, 1989, Anne Adams, then age 17, was driving her father's car in Gig Harbor, taking her 12-year-old sister Susan from their father's house to their mother's house. An accident occurred, and Susan was killed. At issue here is whether Susan's estate can recover underinsured motorist (UIM) benefits under her father's policy.

Recently we held that a child of divorced parents, each of whom maintained a home for the child, was "living with" her father and therefore insured under his automobile policy. *Wolf v. League Gen. Ins. Co.*, 85 Wn. App. 113, 931 P.2d 184 (1997). In *Wolf*, the policy defined "insured" to include relatives "living in your household." The parents had joint custody, and the child stayed frequently with her father and maintained her own room and belongings at his home. We held that young Ms. Wolf was living in both parents' households and was an insured under her father's policy. *Wolf*, 85 Wn. App. at 121.

Here, on very similar facts, we consider the effect of a different definition of insured for underinsured motorist purposes: a relative "who is a resident of your household." We conclude that Susan Adams was a resident of her father's household, and therefore covered under his UIM policy.

### Facts/Procedure

Mark and Jane Adams' marriage was dissolved in

October, 1989. The first line of their detailed parenting plan reads: "Each parent desires to remain responsible and active in their children's growth and development consistent with the best interest of the children." The plan provided that their three children were to "reside with" the father on alternating weekends, every Tuesday evening, one week at Christmas, every spring vacation, four weeks in summer, and alternating holidays and birthdays.[1] The undisputed evidence is that Mark Adams was "fully involved" in his children's lives.

At the time of the accident, Mark's car was insured with Great American Insurance Company. The policy provided underinsured motorist coverage for "any 'family member' " and "any other person 'occupying' 'your [Mark's] covered auto.' " "Family member" is defined as "a person related to you by blood, marriage or adoption, who is a resident of your household." Susan's estate made a claim for underinsured motorist benefits. Great American denied coverage on the grounds that Susan was not a "resident" of Mark's household. The Estate filed a declaratory judgment action. The court granted Great American summary judgment, which the Estate appeals.

## Discussion

■ Summary judgment is proper only if there are no issues of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). This court engages in the same inquiry as the trial court and considers only evidence and issues raised below. *Washington Fed'n of State Employees v. Office of Fin. Mgmnt.*, 121 Wn.2d 152, 157, 849 P.2d 1201 (1993); RAP 9.12.

■ The interpretation of an insurance policy is generally a question of law. *Hess v. North Pac. Ins. Co.*, 122 Wn.2d 180, 186, 859 P.2d 586 (1993). Where coverage turns on the particular fact situation, however, the issue is a mixed

---

[1]Anne Adams was living with neither parent at the time of the dissolution; she was apparently living full-time with her father by consent of all concerned at the time of the accident.

question of law and fact. *See Wolf v. League Gen. Ins. Co.*, 85 Wn. App. 113, 121, 931 P.2d 184 (1997). The factual issues can be decided as a matter of law if only one reasonable conclusion can be drawn. *See, e.g., Allen v. State*, 118 Wn.2d 753, 760, 826 P.2d 200 (1992). Such is the case here, and we therefore review the mixed question of law and fact de novo. *See generally*, Kelly Kunsch, *Standard of Review (State and Federal): A Primer*, 18 Seattle U. L. Rev. 11, 28 (1994).

Under *Millers Cas. Ins. Co. v. Briggs*, 100 Wn.2d 1, 665 P.2d 891 (1983), an insurer may limit its underinsurance coverage to the named insured and family members, and provide none to other insureds such as passengers. *Accord Blackburn v. Safeco Ins. Co.*, 115 Wn.2d 82, 794 P.2d 1259 (1990). Although the Estate disputes the issue, Great American interprets its policy as containing such a limitation. Therefore, we must first address whether Susan was a family member as defined in the policy. If Susan were a resident of her father's household, she was a family member eligible for UIM benefits. Because we hold Susan was a resident, this issue is dispositive.

As noted above, we recently held that a policy defining "relative" as a related person "living in your household" included a child of divorced parents exercising joint custody. *Wolf*, 85 Wn. App. at 120. We identified the inquiry as whether the child was integrated into the covered parent's household. *Wolf*, 85 Wn. App. at 119-20.

Great American points out that, as we have recognized in other cases, "resident" is a term of art with specific meaning. Great American does not precisely enunciate this specific meaning except to urge that it "connotes permanence" and does not include Susan Adams. Great American argues, therefore, that the *Wolf* analysis does not control, since the policy there used "living in" language.

In *State Farm Mut. Auto. Ins. Co. v. Johnson*, 72 Wn. App. 580, 586, 871 P.2d 1066, *review denied*, 124 Wn.2d 1018 (1994), the court noted that "the term 'lives with' has

no legal or technical meaning, unlike the term 'residing with'." The court found the terms qualitatively different, and while the court did not define "residing with," the court held that "lives with" connotes "dwelling in fact whether or not permanently or continuously." *Johnson*, 72 Wn. App. at 586. Thus, a temporary arrangement can satisfy the "lives with" requirement, and the court held that a grown son dwelling temporarily in his parents' home was living with his parents for purposes of their UIM coverage. *Johnson*, 72 Wn. App. at 588-89.

In *Pierce v. Aetna Cas. & Sur. Co.*, 29 Wn. App. 32, 627 P.2d 152, *review denied*, 95 Wn.2d 1032 (1981), the policy covered relatives "while residents of the same household." The court considered whether a child of divorced parents who lived with his mother was also a "resident" of his father's household. Concluding he was not, the court noted that while the child sometimes visited his father, and the father sometimes stayed overnight at the former family home on holidays, the visits between father and son were "infrequent and irregular." *Pierce*, 29 Wn. App. at 40. The court also noted, however, that "[t]here is also authority for treating a child of divorced parents who regularly spends every weekend in his father's house and every weekday in his mother's house as a resident of both households," and that "a person might acquire more than one household by dividing time between two localities on a regular basis." *Pierce*, 29 Wn. App. at 40, 42 (citation omitted).

The *Pierce* court found that "the phrase 'resident of the same household' has no fixed meaning but varies according to the circumstances of the case." *Pierce*, 29 Wn. App. at 36 (citation omitted). After examining the "legion" of cases construing it, the court characterized the phrase as including situations in which persons dwell for a continued length of time under one roof, but also including other situations as well: "A person does not, however, have to remain physically within the household. As long as the person has some regular, permanent attachment to

the family household, most courts find that person remains part of the household." *Pierce*, 29 Wn. App. at 36-37. The court adopted four factors as relevant to the inquiry:

> Thus, the following are relevant factors in determining who is a resident of the same household: (1) the intent of the departing person, (2) the formality or informality of the relationship between the person and the members of the household, (3) the relative propinquity of the dwelling units, and (4) the existence of another place of lodging.

*Pierce*, 29 Wn. App. at 37-38 (citation omitted).

While the first factor may be awkward to apply here, since it is difficult to treat a child as the "departing person" and inquire as to the child's intent,[2] this factor can be sensibly read under these circumstances as referring to the intent of the parents and/or the court in settling the child's residential arrangements. The court-ordered parenting plan required Susan to "reside with" each of her parents, and plainly contemplated that both parents would remain deeply involved in their children's upbringing. In fact, Susan was to spend at least some portion of her day with her father on 140 days of the year. Applying the second factor, Susan Adams' family relationship to her father is obvious; her relationship to his household was formalized by the parenting plan as well as informally observed. In this day of easy transportation, the third factor, "relative propinquity of the dwelling units," may seem less important, although the distance between two homes in one county is slight. As to the fourth factor, Susan Adams had two regular places of lodging.

In *Dautel v. United Pac. Ins. Co.*, 48 Wn. App. 759, 740 P.2d 894, *review denied*, 109 Wn.2d 1009 (1987), the court considered a policy using "resident" language, reviewed various cases, and found the guiding principle to be the

---

[2]The *Pierce* court's reference is to the likelihood of marital reconciliation. *See Pierce*, 29 Wn. App. at 38.

permanency and consistency of the arrangement. A ten-day visitor was held not to be a "resident." The court quoted *Consumers United Ins. Co. v. Johnson*, 26 Wn. App. 795, 801, 614 P.2d 657 (1980), which held: "The term 'resident' connotes a living arrangement with some degree of permanence[.]" *Dautel*, 48 Wn. App. at 763.

In *National Gen. Ins. Co. v. Sherouse*, 76 Wn. App. 159, 882 P.2d 1207 (1994), *review denied*, 126 Wn.2d 1009 (1995), we returned to the *Pierce* factors, and stated: "An important element is whether the 'departing person' intends to eat and sleep away from the residence permanently or temporarily with the intention of returning." *Sherouse*, 76 Wn. App. at 163. The *Sherouse* court characterized the holding of *Pierce* as: "A person can be a resident of two permanent households only if time is divided between the two on a regular basis." *Sherouse*, 76 Wn. App. at 164. Although different language was at issue there, we reiterated this proposition in *Wolf*: "[A] child might acquire more than one residence under proper facts." *Wolf*, 85 Wn. App. at 121.

■ From these cases, we discern clear direction as to the factual inquiry courts must undertake in considering whether children of divorced parents are "residents" of a particular parent's household for insurance coverage purposes. There is no bright line test. It is helpful to review any parenting plan or other court orders, but the inquiry in each case is factual: Does the child regularly spend time in the household in question, such that there exists a continuing expectation of the child's periodic return on intervals regular enough that the household is the child's home during the time the child is there, as opposed to a place of infrequent and irregular visits.

We conclude that Susan Adams was a resident of her father's household, and as such was a covered insured for UIM purposes. The trial court erred in granting summary judgment to the insurer, and we reverse and remand for

entry of summary judgment for the Estate.[3] Because of our holding that Susan is explicitly covered as a family member, we do not address whether the policy excludes from underinsurance coverage "other insureds" who are not family members.

### Fees

The Estate has requested its fees under the doctrine of *Olympic Steamship*, which held that an insurer is liable for fees when it compels its insured to initiate legal proceedings to obtain coverage. *Olympic S.S. Co. v. Centennial Ins. Co.*, 117 Wn.2d 37, 53, 811 P.2d 673 (1991); *McGreevy v. Oregon Mut. Ins. Co.*, 128 Wn.2d 26, 39-40, 904 P.2d 731 (1995). We awarded fees on this basis in *Wolf*, 85 Wn. App. at 122-23, and find no reason to reach a different result here. The Estate is directed to comply with RAP 18.1(d).

Reversed.

BAKER, C.J., and Cox, J., concur.

---

[3]We note that even if the Great American policy did not explicitly provide coverage, the exclusion of a resident child from a parent's underinsured motorist coverage would be void as offending public policy. *See Tissell v. Liberty Mut. Ins. Co.*, 115 Wn.2d 107, 115-23, 795 P.2d 126 (1990) (holding that clauses excluding the policyholder's own car from the definition of underinsured vehicle are void as against public policy when they deny underinsured motorist coverage to a named insured, i.e., a policy holder or an immediate family member.) *Accord Jain v. State Farm Mut. Auto. Ins. Co.*, 130 Wn.2d 688, 690, 926 P.2d 923 (1996).