HERBST, by Guardian *ad litem,* Respondent, v. HANSEN, Defendant: GENERAL CASUALTY COMPANY OF WISCONSIN, Appellant.

*No. 198. Argued March 31, 1970.—Decided April 28, 1970.*
(Also reported in 176 N. W. 2d 380.)

"  . . .

"  . . .

For the appellant there was a brief by *Wickham, Borgelt, Skogstad & Powell,* attorneys, and *Edmund W. Powell* of counsel, all of Milwaukee, and oral argument by *Edmund W. Powell.*

For the respondent there was a brief by *Karius, Kmiec & Kay,* attorneys, and *Roger J. Karius* of counsel, all of Milwaukee, and oral argument by *Roger J. Karius.*

BEILFUSS, J. Did the trial court abuse its discretion in denying the motion for summary judgment on the basis there are material facts in dispute?

The discretionary nature of a trial court's authority in the area of summary judgment was discussed in *Zimmer v. Daun* (1968), 40 Wis. 2d 627, 631, 162 N. W. 2d 626:

"We think sec. 270.635, Stats., providing for summary judgment, does not confer a right to summary judgment but rather confers on the trial court a discretionary power to grant summary judgment when it believes summary disposition of a case is called for. The language of this section provides that 'Summary judgment may be entered' as provided in the section and that 'The judgment may be entered in favor of either party.' In sub. (3) it is provided that a summary judgment 'may be awarded' to the plaintiff although he has not moved therefor if upon motion by a defendant it shall appear to the court that the plaintiff is entitled to such judgment. There is no requirement, however, that the court must do so." [1]

In recent cases this court has said the summary judgment statute "vests discretion in the trial court as to whether the case should be tried. It follows that an order denying a motion for summary judgment will not be reversed until it appears that the trial court abused its legal discretion or has not exercised it;" [2] that a trial court does not abuse its discretion in denying a motion for summary judgment "unless it either incorrectly decides a legal issue or it declines to decide a legal issue which is capable of resolution in a factual vacuum." [3] "If the party opposing the motion for summary judgment submits sufficient facts which show there is a real

[1] *See also Cadden v. Milwaukee County* (1969), 44 Wis. 2d 341, 171 N. W. 2d 360.

[2] *Hardscrabble Ski Area v. First Nat. Bank* (1969), 42 Wis. 2d 334, 338, 339, 166 N. W. 2d 191.

[3] *McConnell v. L. C. L. Transit Co.* (1969), 42 Wis. 2d 429, 435, 167 N. W. 2d 226.

controversy and takes the matter challenged by the motion out of the category of being a sham and unmeritorious suit or defense, that party is normally entitled to a trial on the merits."[4] It has also been said that, "A trial court need not decide a question of law on a motion for summary judgment . . . even though no conflict of material facts exists. There is no absolute right to summary judgment."[5]

The trial court denied the summary judgment motion on the ground the material fact of whether Paul Herbst was a resident of the same household as Clarence Herbst was in dispute. The basic contention of the appellant is that the minor plaintiff cannot, as a matter of law, be considered a member of the same household as Clarence Herbst when custody had been awarded to Emily Herbst under the decree of legal separation. It is urged that without a showing of an agreement of reconciliation between the parents, any instances of Clarence living with the family at 830 North 23rd Street were merely temporary and did not alter the fact that Paul Herbst was not a resident of the same household as the insured, Clarence Herbst.

The term "household" has been generally defined in 41 C. J. S., *Household,* pp. 367, 368, as follows:

"The word is one of well-known legal meaning, being the definition of the Latin word 'familia.' It has been variously defined, depending to some extent on the connection in which it is used; and may mean a domestic establishment, a family, a number of persons dwelling under the same roof and composing a family; and, by extension, all who are under one domestic head; a group of persons living together; the members of a house collectively; an organized family and whatever pertains to it as a whole; persons who dwell together as a family; also the place where one holds house, his home."

[4] *Schuster v. Germantown Mut. Ins. Co.* (1968), 40 Wis. 2d 447, 452, 162 N. W. 2d 129.

[5] *Zimmer v. Daun, supra,* page 630.

In *Lontkowski v. Ignarski* (1959), 6 Wis. 2d 561, 565, 95 N. W. 2d 230, this court adopted the following definition:

"'Household' is defined by Webster as 'those who dwell under the same roof and compose a family.' That definition corresponds with the common and approved usage of the term and is supported by judicial authority. 'Persons who dwell together as a family constitute a "household."' *Arthur v. Morgan* (1884), 112 U. S. 495, 499, 5 Sup. Ct. 241, 243, 28 L. Ed. 825.

"On the evidence in the present record the trial court could properly find that the young men, Donald and Joseph, were dwelling with their parents as a family under one roof, and hence were members of the same household. The facts that each brother was a little more than twenty-one years old, had a job, and paid something for room and board, either in money or work, did not require a finding that they were not living in the house as members of the same family."

A test to be applied in addition to the *Lontkowski* definition in determining membership in a household was set forth by this court in *Doern v. Crawford* (1966), 30 Wis. 2d 206, 213, 214, 140 N. W. 2d 193:

". . . the controlling test of whether persons are members of a household at a particular time is not solely whether they are then residing together under one roof. Living together under one roof is a factor to be considered and must have occurred at some time. When not occurring at the time in question, the absence from the family roof must be of a temporary nature with intent on the part of the absent person to return thereto. There is a close analogy between the concepts of household and domicile because intent of the person involved plays such a significant part. The one material difference between the two is that a domicile once acquired is not lost when a person leaves it, even though intending never to return, until he establishes a domicile elsewhere. We determine that this is not true with respect to a household, and, therefore, physical absence coupled with intent not to return is sufficient to sever the absent person's membership in the household. Every person has

a domicile but not every person is a member of a household.

"Whether the absence from the household is of long or short duration is immaterial except as it may give rise to an inference of intent to remain away permanently or only temporarily. In the instant situation the fact that Paulson later discontinued the divorce action and returned to the household of his wife and stepson is not conclusive on the issue of whether his absence therefrom at time of accident was intended by him to be permanent or temporary; nor is the statement contained in his affidavit, that he left the family household with intent not to return, conclusive on this issue."

The trial court's order in *Doern, supra,* denying the defendant insurance company's motion for summary judgment was affirmed on the basis the intent of the absent person was not an issue that properly can be decided on a motion for summary judgment. It was said that a person's credibility respecting his subjective intent does not lend itself to determination by affidavit.

The prime distinction between the *Doern Case* and the instant one is that a final decree of legal separation between Clarence and Emily Herbst had been entered, while in *Doern* an action for absolute divorce had been commenced but no judgment entered at the time of the accident. General Casualty argues that the question of Clarence Herbst's intent is legally determined by the decree of legal separation. The appellant also asserts that absent an agreement of reconciliation on the part of Emily Herbst, Clarence's intent to consider the family residence at 830 North 23rd Street his household is immaterial.

In a case in which the insurer denied coverage in reliance on a clause which excluded protection for relatives who were residents of the household of the named insured, this court said:

"The intention of the members as to the duration of the relationship would seem to be important in only two respects. The intended duration should be sufficient so

as not to be inconsistent with the intimacy of the relationship, and also long enough so that it is reasonable to expect the parties to take the relationship into consideration in contracting about such matters as insurance or in their conduct in reliance thereon." [6]

Both the *Doern* and *National Farmers Union Cases* recognize the issue of intent is an indicative factor of whether the absence from the household is of a temporary nature. It is certainly arguable that aside from the decree of legal separation there are certain conflicting allegations of fact respecting the intent of Mr. and Mrs. Herbst to effect a reconciliation. If the decree does not preclude a finding that Mr. Herbst's absence was temporary, then it is clear the trial court did not abuse its discretion in denying summary judgment.

In its argument that the degree of legal separation rendered Clarence Herbst's absence permanent, the cases from other jurisdictions discussed by the trial court are all distinguished by the appellant on the basis they involved only pending actions for divorce. *See American Casualty Co. v. Walzl* (1965), 238 Md. 322, 208 Atl. 2d 597; *Lumbermens Mut. Casualty Co. v. Continental Casualty Co.* (Alaska, 1963), 387 Pac. 2d 104; *Mazzilli v. Accident & Casualty Ins. Co.* (1961), 35 N. J. 1, 170 Atl. 2d 800; and *Cal-Farm Ins. Co. v. Boisseranc* (1957), 151 Cal. App. 775, 312 Pac. 2d 401.

In considering whether the decree rendered Clarence Herbst's absence permanent, the trial court said:

"The marriage relation under a decree of legal separation is merely suspended as to certain marital rights. They are not annulled but are limited and regulated by the judgment. Here only with respect to custody and visitation are the rights of Mr. Herbst, as father of the minor children, restricted and limited. The reason for a judgment providing for such arrangement is that it leaves hope for a reconciliation. *Weber v. Weber*, 257 Wis.

[6] *National Farmers Union Property & Casualty Co. v. Maca* (1965), 26 Wis. 2d 399, 406, 132 N. W. 2d 517.

613, 44 N. W. (2d) 571. Nelson, Divorce and Annulment (2nd ed.) Vol. 1, section 1.08; 27A C. J. S., section 160.

"Under section 247.33, Stats., in case of a reconciliation, only the parties may apply for a revocation of the judgment. It is not clear what effect a reconciliation may have on an unrevoked decree of legal separation although there is authority elsewhere that the decree remains effective as a regulation of marital duties and will still govern the obligations of the parties if after a reconciliation they part again."

In *Weber v. Weber* (1950), 257 Wis. 613, 614, 44 N. W. 2d 571, the authority relied on by the trial court, this court said:

"An action for an absolute divorce differs decidedly from one in which a party is seeking a partial suspension of the marriage relation and providing for a legal separation, that is, a divorce from bed and board. The reason for a judgment providing for the latter arrangement is that it leaves hope for a reconciliation."

There is an inference in appellant's argument that the only explanation for Mrs. Herbst seeking a legal separation rather than absolute divorce was her religious beliefs. At the adverse examination, however, she denied that was the sole reason for a separation rather than divorce.

Regardless of the motivation for the type of action brought affecting the marriage, it is still clear that there are more rights and obligations remaining in the marriage after a legal separation than following an absolute divorce. The clearest example of greater remaining rights under a separation decree is found in sec. 247.33, Stats., which provides for a revocation of the judgment upon reconciliation and application of the parties to set aside the decree. Thus a judgment of legal separation can be revoked or set aside at any time the parties affect a reconciliation; not so with a judgment of absolute

divorce. It becomes final [7] insofar as the status of the parties is concerned after the expiration of one year.

As a matter of *dicta,* we state that if Mrs. Herbst had obtained an absolute divorce it would be appropriate to rule, as a matter of law, that Clarence Herbst's absence from the family household was of a permanent nature.[8] The judgment of legal separation in this case provided for reconciliation and revocation of the judgment upon application of the parties. A desire of an intention of one party would not be sufficient to set aside the decree because that application must be made by the parties under the terms of sec. 247.33, Stats.; but here the affidavits of both parties (and their adverse examinations) indicate that both parties had seriously considered the possibility of reconciliation and an intention to cohabit as a family unit at 830 North 23rd Street. In *Doern, supra,* this court has said the credibility of a witness with respect to his subjective intent does not lend itself to resolution by affidavit. Thus even though there is no significant dispute in the material facts the inferences to be drawn therefrom are doubtful. We conclude it was not an abuse of discretion to deny the motion for summary judgment.

*By the Court.*—Order affirmed.

---

[7] The parties could remarry, however.

[8] *See St. Paul Mercury Ins. Co. v. Nationwide Mut. Ins. Co.* (1968), 209 Va. 18, 161 S. E. 2d 694.