### 19960

Eunice COOK, Plaintiff-Respondent, v. FEDERAL INSURANCE COMPANY et al., Defendants-Respondents-Appellant of whom Federal Insurance Company is, Appellant, and Great American Insurance Company is, Respondent.

Wyman Luther COOK, Plaintiff-Respondent, v. FEDERAL INSURANCE COMPANY et al., Defendants-Respondents-Appellant, of whom Federal Insurance Company is, Appellant, and Great American Insurance Company is, Respondent.

(211 S. E. (2d) 881)

*Messrs. Weinberg, Bryan, Warner & Brown,* of Sumter, *for Appellant,*

*Messrs. Baker & Etheridge,* of Darlington, *for Respondents, Eunice Cook and others,*

*Messrs. Wright, Scott, Blackwell & Powers,* of Florence, *for Respondent, Great American Insurance Company,*

February 11, 1975.

LITTLEJOHN, Justice:

The station wagon in which Wyman Luther Cook (owner) and his wife, Eunice Cook, were riding, was involved in a collision with a Ford sedan driven by Johnny Lee Busby and owned by his employer, Uldon Ted McDaniel. The Cooks are residents of Darlington County. The collision occurred in Clarendon County.

At the time, the station wagon of the Cooks was covered by a liability insurance policy issued by Federal Insurance Company. The policy included the usual statutory uninsured motorist provisions. The sedan of McDaniel was covered by a liability insurance policy issued by Great American Insurance Company. Both policies were admittedly in full force at the time of the collision.

After the Cooks procured default judgments against McDaniel in the Court of Common Pleas for Clarendon County, and after Federal Insurance Company refused to pay the judgments, this action was commenced on May 29, 1972, against both Federal and Great American for the purpose of recovering the amount of the judgments procured against McDaniel. The lower court ruled that Federal was liable for the judgments and that Great American was not liable. Federal has appealed.

The facts out of which the controversy arises are as follows:

After the collision both McDaniel and a South Carolina Highway Patrolman came upon the scene. McDaniel exhibited the registration card for his Ford sedan, together with his own driver's license. The sedan of McDaniel was registered in Lumberton, North Carolina and carried a North Carolina license plate. McDaniel's driver's license was issued by the North Carolina Highway Department. The collision report prepared by the highway patrolman indicated the North Carolina registration of the sedan. The official report indicated that the sedan was towed by "owner by private means" to "residence on lake nearby." After the collision report was completed, McDaniel took the Cooks in another car to his home located on Lake Marion, a resort area.

McDaniel averred that he had been working in North Carolina since 1962. The style of his business was "U. T. McDaniel, doing business as Aluminum Industries." He was in the construction business and financed construction projects, mostly aluminum siding. He customarily stayed in Lumberton at a motel from Monday until Friday or Saturday of each week. He maintained an office operation at Lumberton within the office of a sign company, using it as a mailing address, telephone answering service, and for the transaction of his business. His family remained in Clarendon County, South Carolina, where he spent the weekends. The address shown on his driver's license and automobile registration card was 601 West 5th Street in Lumberton, North Carolina.

The tort action wherein the Cooks sued McDaniel was commenced August 24, 1970. The Summons and Complaint were served under the provisions of Section 46-104 and Section 10-431 *et seq.,* of the Code of Laws of South Carolina for 1962. These code sections provide that a motorist who is a nonresident of South Carolina may be served by delivery of a copy of the Summons and Complaint to the

State Highway Commissioner for transmittal by way of a certified letter to the defendant in another state. The Summons and Complaint were mailed to the North Carolina address supplied by McDaniel to the highway patrolman. The certified letter containing the Summons and Complaint was returned marked "unclaimed—no such number—addressee unknown." Thereafter, on September 18, a copy of the Summons and Complaint was sent by open mail as required by the statute to McDaniel at the same address. This letter was not returned.

McDaniel defaulted. Great American was notified of the collision, but no Summons and Complaint were delivered to it.

On May 11, 1971, the Cooks, pursuant to the uninsured motorist law, Section 46-750.33, served their own liability insurance carrier, Federal, with a copy of the Summons and Complaint. Federal made no appearance.

On March 24, 1972, the Cooks procured default judgments against McDaniel. Wyman Luther Cook's judgment was $1500 property damages, and Eunice Cook's judgment was for $8500 damages, personal injury. Thereafter Federal moved to reopen the default judgments upon the ground of excusable neglect; the motion was denied.

On May 29, 1972, the action here on appeal was commenced by the Cooks against both Federal and Great American, McDaniel being made a party.

The Complaint alleges that the Cooks are entitled to recover, jointly and severally, from the two insurance companies by reason of the respective policies hereinabove.

The basic contention of Federal is that the Court of Common Pleas for Clarendon County, which entered the default judgments, lacked jurisdiction over the person of McDaniel because of improper and ineffectual service upon him of the Summons and Complaint under the nonresident motorist law, it being contended that McDaniel was not a nonresident

of South Carolina, and further, that the law as set forth in Section 10-431.1 was not strictly complied with. That section reads as follows:

"Same; when defendant does not receipt for notice sent by certified mail.—If the defendant in any such cause shall fail or refuse to accept and receipt for certified mail containing the notice of service and copy of the process and it shall be returned to the plaintiff or the motor vehicle division of the State Highway Department, the original envelope as returned shall be retained and the notice and copy of the summons shall be sent by open mail and the envelope and affidavit of mailing with sufficient postage of such open letter shall be filed with the clerk of court in which such action is pending and upon the filing thereof shall have the same force and legal effect as if such process has been personally served upon such defendant."

In its Answer Great American admits that it had notice of the collision and denied coverage to Busby, the driver of the McDaniel vehicle. It was the contention of Great American that the vehicle was being used without the permission of the owner and its operation was excluded under the terms of the policy. Great American further asserts as a defense that it was never supplied with a copy of the Summons and Complaint as required by the policy before liability to pay attaches to the insurer.

McDaniel again defaulted.

The first question we must answer is "Was McDaniel a nonresident motorist amenable to process under Sections 10-431 and 46-104 of the 1962 Code." It has been held that "residence" is a more elastic and flexible term than domicile or citizenship. A person may have only one domicile, but may have several residences. McDaniel testified that he was required by the police authorities in North Carolina to obtain licenses and registrations for his vehicles in North Carolina; in a similar situation, our court has held that persons domiciled outside South Caro-

lina have become residents of South Carolina for purposes of enforcement of statutory laws relating to motor vehicles. *Stovall v. Sawyer,* 181 S. C. 379, 187 S. E. 821 (1930).

In 8 Am. Jur. (2d), Automobiles, Sections 867 and 868, it is stated:

". . . it is no absolute requirement to good and valid service that the Defendant actually receive the notice in order to vest jurisdiction in the courts, provided the Plaintiff has acted in good faith and stated correctly the last known address of the nonresident Defendant . . ."

\* \* \*

". . . in some cases it has been said that the burden is on the Plaintiff to investigate and learn the last known address of the Defendant. However, the general trend of authorities is to sustain the validity of service of process if the statutory provisions in themselves indicate there is a reasonable probability that, if the statute is complied with, the Defendant will receive actual service."

Other jurisdictions have held that Plaintiff is entitled to rely upon information furnished the investigating officer. *Sorenson v. Stowers,* 251 Wis. 398, 29 N. W. (2d) 512 (1947). Citing *Hess v. Pawloski,* 274 U. S. 352, 47 S. Ct. 632, 71 L. Ed. 1091 (1927), the Wisconsin Court noted that actual notice in every case was not required for valid service. The Court further noted that to uphold a Defendant in furnishing an incomplete or incorrect address to the office could defeat the purpose of the nonresident motorists' statute. The Court held that the only requirement was that Plaintiff comply with the statute in good faith, which was done in his case.

The evidence of nonresidency was supplied by McDaniel himself. According to his own testimony he spent more time in Lumberton than he did in Clarendon County. McDaniel has not contested the manner of service upon him, and by defaulting has failed to contend that the service was basically unfair.

Federal should not be heard to complain that the service was not proper. Its contract with Cook gave it the right to defend the action. Federal was properly notified by the Cooks, who served upon Federal the Summons and Complaint on June 11, 1971. Federal failed to carry out its obligation and did nothing until May 1, 1972, some ten months later. At this time Federal moved to have the judgments reopened on the ground of excusable neglect, which ground was clearly without merit, and the lower court so held. This is not a case wherein plaintiff hurries an action along before the insurance company has adequate time to participate. After Federal was served plaintiff waited from June 11, 1971 to March 24, 1972, to take judgment. We agree with the lower court in its hloding that McDaniel was amenable to service under the nonresident motorists' statute.

We also agree with the lower court in its holding that McDaniel did "fail or refuse to accept and receipt" for the certified letter sent him by the Chief Highway Commissioner. Our statute does not require that one refuse to accept service. The statutes in some states do require a refusal.

McDaniel's insurance carrier, having successfully denied coverage, and McDaniel having been served under the nonresident motorists' statute, we hold that it became the right of Federal to defend the action under the uninsured motorists' provision of its policy issued for the benefit of the Cooks, and accordingly must pay.

It is not inappropriate to state that counsel for Federal moved promptly and pursued the case "diligently after he was employed." Failure to participate in the case was solely the fault of the employees of Federal.

Moss, C. J., and Lewis, Bussey and Ness, JJ., concur.