586 S.E.2d 865

AUTO–OWNERS INSURANCE COMPANY, Respondent,

v.

Shirley Maxine HORNE, Crystal Horne,
and Michael Horne, Appellants.

No. 3674.

Court of Appeals of South Carolina.

Heard June 11, 2003.

Decided Sept. 15, 2003.

Rehearing Denied Oct. 16, 2003.

Jon E. Newlon and John R. McCravy, III, both of Greenwood, for appellants.

James P. Walsh, of Greenville, for respondent.

54

**CONNOR, J.:**

In this declaratory judgment action, the special referee found Crystal Horne was not a Class I insured entitling her to stack underinsured motorist benefits under Shirley Maxine Horne's automobile insurance policy. Crystal, Shirley Maxine, and Michael Horne appeal, arguing the referee erred in finding: (1) Crystal was not a resident relative of Shirley Maxine Horne and Michael Horne's household, and (2) Crystal was not herself a named insured on the policy. We affirm.

## FACTS/PROCEDURAL HISTORY

Crystal Horne's parents divorced on July 22, 1988. The final divorce decree, entered in Saluda County, ordered that Crystal's mother, Dianne Williams (Williams), "be granted the permanent care, custody and control of the parties' minor children" and that Michael Horne (Mr. Horne) "be granted the right to reasonable periods of visitation with the parties' minor children." After the divorce, Crystal's mother remarried and remained living in Saluda until moving to Conway in 1992. Crystal, however, stayed with her father in the Greenwood/Saluda area for approximately three months before moving to Horry County to live with her mother and younger sister. Before she moved to Horry County, Crystal had lived with Williams in Saluda and had stayed with her father during the summer months and every other weekend during the school year.

On March 9, 1997, Crystal sustained personal injuries from an automobile wreck in Horry County while operating a 1987 Chevrolet Camaro. The Camaro was insured under an automobile policy issued by Auto–Owners Insurance Company (Auto–Owners) to Shirley Maxine Horne (Mrs. Horne) as the named insured. Mrs. Horne is Michael Horne's wife and Crystal's stepmother. Mr. Horne owned the Camaro. At the time of the accident, Crystal was seventeen years old and her driver's license listed an address in Conway. Crystal stated the address on the driver's license is where she was living with her mother at the time of the accident.[1]

---

1. Crystal was apparently confused during her deposition about her stated address and the address listed on her driver's license. Crystal stated she lived at 4134 Highland Drive, Aynor, at the time of the

From 1992 until the date of the accident, Crystal continued to live with Williams in the Conway area and visited her father in Saluda during the summers, holidays, and occasional weekends during the school year. Crystal would usually spend the whole summer with her father in Saluda. However, the summer prior to the accident Crystal stayed in Saluda for only a few days during the summer. During Crystal's trips to Saluda, she would also visit and stay with her grandmothers and aunts, who lived in the area.

Following the accident, Crystal recovered the limits against the liability insurance carrier for the at-fault driver and then made a claim to Auto–Owners for underinsured motorist (UIM) benefits. Auto–Owners paid Crystal the primary UIM coverage on the vehicle involved in the wreck.[2] Crystal then submitted a claim to Auto–Owners seeking to recover additional UIM benefits by stacking coverages of other vehicles insured under Mrs. Horne's policy.

Auto–Owners filed this declaratory judgment action seeking to determine Crystal's eligibility for stacking UIM benefits under the policy. Pursuant to Rule 53(b), SCRCP, the parties consented to have the matter heard by a special referee, with appeal from the referee's final judgment to be made directly to this Court. The referee found Crystal was not entitled to stack UIM benefits because she was not a named insured on the Auto–Owners policy and did not reside in the named insured's household at the time of the accident. The Hornes appeal.[3]

---

accident and that this was the address found on her driver's license. Crystal had earlier testified she and her mother "moved to 4134 in Aynor" after living at an address in Conway. However, the copy of Crystal's driver's license included in the record lists her address as Plum Tree Lane, Conway. Any discrepancy between Crystal's stated address and that found on her driver's license does not affect our analysis.

**2.** The underinsured motorist endorsement of the policy issued to Mrs. Horne stated Auto–Owners "will pay damages for: (1) Bodily injury sustained by any person occupying or getting in or out of an automobile ... covered by the Liability Coverage of the Policy, provided such person is legally entitled to recover such damages from the owner or driver of an [under]insured motor vehicle."

**3.** In their brief, the Hornes argued the referee erred in finding Crystal was not also a named insured under the Auto–Owners policy. Howev-

## STANDARD OF REVIEW

 "A suit for declaratory judgment is neither legal nor equitable, but is determined by the nature of the underlying issue." *Felts v. Richland County*, 303 S.C. 354, 356, 400 S.E.2d 781, 782 (1991). "An issue essentially one at law will not be transformed into one in equity simply because declaratory relief is sought." *Id.*

 The issue here involves whether Crystal can stack underinsured motorist coverage available under an insurance policy. "An action to determine coverage under an insurance policy is an action at law." *South Carolina Farm Bureau Mut. Ins. Co. v. Wilson*, 344 S.C. 525, 528–29, 544 S.E.2d 848, 849 (Ct.App.2001); *see Richardson v. South Carolina Farm Bureau Mut. Ins. Co.*, 336 S.C. 233, 519 S.E.2d 120 (Ct.App. 1999) (stating an action seeking a declaration of whether coverage under uninsured motorist policies could be stacked is an action at law); *see also State Auto Prop. & Cas. Ins. Co. v. Gibbs*, 314 S.C. 345, 444 S.E.2d 504 (1994) (stating an action to declare excess insurance coverage is an action at law).

In a non-jury action at law, the judge's findings of fact will not be disturbed on appeal unless they are without evidentiary support. *Rickborn v. Liberty Life Ins. Co.*, 321 S.C. 291, 468 S.E.2d 292 (1996). The trial court's findings of fact have the same force and effect as a jury verdict unless it committed some error of law leading to an erroneous conclusion or unless the evidence is reasonably susceptible of the opposite conclusion only. *Noisette v. Ismail*, 299 S.C. 243, 384 S.E.2d 310 (Ct.App.1989), *rev'd on other grounds*, 304 S.C. 56, 403 S.E.2d 122 (1991). We must affirm the trial court if there is any evidence that reasonably supports its decision. *Id.* In reviewing the findings, we must view the evidence and all its reasonable inferences in the light least favorable to the losing party below. *Id.*

*Hiott v. Guar. Nat'l Ins. Co.*, 329 S.C. 522, 528–29, 496 S.E.2d 417, 421 (Ct.App.1997).

## DISCUSSION

The Hornes argue the evidence established that Crystal resided with her father for part of the year and the special

---

er, at oral argument the Hornes abandoned this argument. Thus, we will not address it.

referee thus erred in finding as a matter of law that Crystal was not a resident relative of her father's household for stacking purposes.

■■■■■ "Stacking is the insured's recovery of damages under more than one policy until the insured satisfies all of his damages or exhausts the limits of all available policies." *Cont'l Ins. Co. v. Shives*, 328 S.C. 470, 473, 492 S.E.2d 808, 810 (Ct.App.1997). "In determining whether an insured can stack, insureds are divided into two classes: Class I and Class II. Only Class I insureds can stack." *State Farm Mut. Auto. Ins. Co. v. James*, 337 S.C. 86, 94, 522 S.E.2d 345, 349 (Ct.App. 1999). Previous cases have stated section 38–77–160 of the South Carolina Code of Laws [4] is the statute controlling the right to stack and that under this section "a Class I insured is an insured or named insured who 'has' a vehicle involved in the accident." *Concrete Servs., Inc. v. United States Fid. & Guar. Co.*, 331 S.C. 506, 512, 498 S.E.2d 865, 868 (1998). In order "to 'have' a vehicle involved in the accident as a prerequisite to stacking mean[s] only that a person must be a Class I insured with respect to a vehicle involved in the accident." *Id.* at 513, 498 S.E.2d at 868. A Class I insured has been repeatedly defined as the named insured, his spouse and relatives residing in his household. *Id.; see also Davidson v. E. Fire & Cas. Ins. Co.*, 245 S.C. 472, 477, 141 S.E.2d 135, 138 (1965) (defining a Class I insured as the "named insured, his spouse and **his or her** relatives resident in the same household") (emphasis added).[5] A Class II insured includes any person using, with the consent of the named insured, the

---

4. Section 38–77–160 provides in part:

 If, however, an insured or named insured is protected by uninsured or underinsured motorist coverage in excess of the basic limits, the policy shall provide that the insured or named insured is protected only to the extent of the coverage he has on the vehicle involved in the accident. If none of the insured's or named insured's vehicles is involved in the accident, coverage is available only to the extent of coverage on any one of the vehicles with the excess or underinsured coverage.

 S.C.Code Ann. § 38–77–160 (2002).

5. Even though *Davidson* defined two classes of insured persons, the decision did not involve an issue of stacking. In *Davidson*, the two

motor vehicle to which the policy applies and a guest in the motor vehicle. *Garris v. Cincinnati Ins. Co.*, 280 S.C. 149, 311 S.E.2d 723 (1984).

classes of insureds were culled from the definition of the term "insured" under section 46–750.11 of the 1962 South Carolina Code of Laws. *Davidson*, 245 S.C. at 476–77, 141 S.E.2d at 137–38. This section defined "insured" as the "named insured and, while resident of the same household, the spouse of any such named insured and relatives of **either** ..., and any person who uses, with the consent ... of the named insured, the motor vehicle to which the policy applies and a guest in such a motor vehicle...." S.C.Code Ann. § 46–750.11 (1962) (emphasis added). The current definition of insured found in section 38–77–30 is nearly identical to the former definition under which the *Davidson* court formed the separate classes of insureds. However, it appears that later stacking cases have pared down the language of a Class I insured to include only the named insured, his spouse, and relatives residing in his household, rather than relatives of **either** the named insured or the spouse of the named insured. *See, e.g., Concrete Servs., Inc.*, 331 S.C. at 514, 498 S.E.2d at 868–69 (stating that to qualify as a Class I insured an individual must be the spouse or relative of the named insured); *Garris v. Cincinnati Ins. Co.*, 280 S.C. 149, 156, 311 S.E.2d 723, 727 (1984) (defining the first class of insureds to include the named insured, his spouse and relatives residing in his household); *Richardson v. South Carolina Farm Bureau Mut. Ins. Co.*, 336 S.C. 233, 235, 519 S.E.2d 120, 122 (Ct.App.1999) ("A Class I insured is a named insured, his spouse, and relatives residing in his household.").

A literal and exacting application of the definition of a Class I insured in the stacking cases after *Davidson* raises an interesting issue in the present case. Obviously, the question of whether someone is a resident relative requires that residency and relationship be shown. Since Crystal is not a spouse of Mrs. Horne, the named insured, in order for Crystal to stack UIM benefits she must be Mrs. Horne's relative. However, Crystal may not be Mrs. Horne's relative. Ordinarily, a relative is defined as a person connected by blood, marriage, or adoption. *Inman v. South Carolina Ins. Co.*, 300 S.C. 550, 551–52, 389 S.E.2d 173, 174 (Ct.App.1990). But "[i]n the context of insurance contracts, 'relative' has been reasonably interpreted as restricted to those related by consanguinity and excluding those related by affinity." *Forner v. Butler*, 319 S.C. 275, 278, 460 S.E.2d 425, 427 (Ct.App.1995).

However, even though Crystal may not be Mrs. Horne's relative based on *Forner*, Auto–Owners did not raise this issue in its complaint. In its brief, Auto–Owners states the "Special Referee correctly held that Crystal Horne was not living with her father and the named insured (stepmother) at the time of the ... accident." Thus, because Crystal is certainly Mr. Horne's relative, and thereby is entitled to stack if she is a resident, we will address whether Crystal is a resident of her father's, and Mrs. Horne's, household for stacking purposes. Moreover, in this case, the household of óne (Mr. Horne) is the household of the other (Mrs. Horne).

The pertinent inquiry here is whether Crystal is a Class I insured. Specifically, the issue is whether Crystal was a resident relative of the named insured's household entitling her to stack UIM benefits under the policy.

Our Supreme Court first analyzed whether a person was a resident relative of the same household as the named insured in *Buddin v. Nationwide Mut. Ins. Co.*, 250 S.C. 332, 157 S.E.2d 633 (1967). In finding a nephew was a "relative resident of the same household" as his uncle, as that term was used in the uncle's insurance policy to extend coverage to additional insureds, the Court stated " 'a resident of the same household is one, other than a temporary or transient visitor, who lives together with others in the same house for a period of some duration, although he may not intend to remain there permanently.' " *Id.* at 339, 157 S.E.2d at 636 (quoting *Hardware Mut. Cas. Co. v. Home Indem. Co.*, 241 Cal.App.2d 303, 50 Cal.Rptr. 508, 514 (1966)); *see also Farmers Ins. of Columbus, Inc. v. Taylor*, 39 Ohio App.3d 68, 528 N.E.2d 968, 969 (1987) (stating "the word 'resident' as used in the phrase 'resident of your household,' [unless otherwise defined in a policy,] refers to one who lives in the home of the named insured for a period of some duration or regularity, although not necessarily there permanently, but excludes a temporary or transient visitor."). The Court also noted several factors for possible consideration but stated that none of the factors were determinative of the issue. *Buddin*, 250 S.C. at 338–39, 157 S.E.2d at 636. The factors included: (1) the payment of rent or board; (2) the presence or absence of control over the relative; and (3) whether there was lack of a permanent living arrangement. *Id.*

This Court has more recently considered whether an individual was a resident relative in *Auto Owners Ins. Co. v. Langford*, 330 S.C. 578, 500 S.E.2d 496 (Ct.App.1998), and *Richardson v. South Carolina Farm Bureau Mut. Ins. Co.*, 336 S.C. 233, 519 S.E.2d 120 (Ct.App.1999). In *Langford*, we recognized the notion of the individual's intent and noted "a person may be a resident relative for insurance purposes even though he does not have an intent to permanently reside with the insured." *Langford*, 330 S.C. at 583, 500 S.E.2d at 498.

In *Richardson,* we affirmed the trial court's determination that a twenty-five-year-old graduate student was not a resident relative of her father's household, and thus, was not entitled to stack uninsured motorist coverage under her father's policy. The daughter was held to be a "transitory visitor," even though she still had certain connections to her father's household. *Richardson,* 336 S.C. at 236–37, 519 S.E.2d at 122. In so holding, we noted several factors supporting the trial court's finding that the daughter was not a resident of her father's household, including: (1) she kept an exercise machine, some furniture, and seasonal clothes at her father's house; (2) she acknowledged living in various apartments in the seven years preceding the accident; (3) she usually visited her parents once a month for three to four days at a time; (4) she spent only a portion of two summers with her parents in the four years prior to the accident; (5) she filed her own tax returns and claimed herself as a dependent; (6) her tax refund was not sent to her father's house; (7) her driver's license did not list her father's address; (8) she was registered to vote in a different county than her father; and (9) Richardson worked regularly and claimed income of over $10,000 in each of the two years prior to the accident. *Id.* at 237, 519 S.E.2d at 122–123.

In *State Farm Fire & Cas. Co. v. Breazell,* our Supreme Court also discussed, in the context of a homeowner's policy, whether a foster child was a resident of the foster parents' household and adopted a three-factor test for making this determination. *State Farm Fire & Cas. Co. v. Breazell,* 324 S.C. 228, 478 S.E.2d 831 (1996).

The determination under the ... test is dependent upon [these] factors: (1) living under the same roof; (2) in a close, intimate and informal relationship between the parties; and (3) where the intended duration of the relationship is likely to be substantial, where it is consistent with the informality of the relationship, and from which it is reasonable to conclude that the parties would consider the relationship in contracting about such matters as insurance or in their conduct in reliance thereon.

*Id.* at 231, 478 S.E.2d at 832.

Notwithstanding the South Carolina appellate courts' determinations of resident relative status in the above cases, our

courts have not considered the issue of whether a child is a resident relative of a noncustodial parent's household when the child's parents are divorced or separated, the child is living with one parent, and custody of the child has been established. Numerous other states have visited this issue with varying results. *See generally* Carolyn Kelly MacWilliam, Annotation, *Who is "Member" or "Resident" of Same "Family" or "Household" within No–Fault or Uninsured Motorist Provisions of Motor Vehicle Insurance Policy,* 66 A.L.R.5th 269 (1999).

The analysis in cases of this type is generally fact-specific and no bright line test exists for determining under what instances a child is a resident relative of a noncustodial parent. *See Griffith v. Sec. Ins. Co. of Hartford,* 167 Conn. 450, 356 A.2d 94, 97 (1975) (stating the problem of deciding whether a person is a member of a particular household is dependent upon the factual circumstances involved and noting the factual circumstances in the cases are so varied that the decisions are of little precedential value); *Adams v. Great Am. Ins. Cos.,* 87 Wash.App. 883, 942 P.2d 1087, 1091 (1997) (stating there is no bright line test for determining residency in a household and the inquiry in each case is factual). The fact-specific analysis in the various cases can be attributed to the phrase "resident of the same household" having no absolute or precise meaning. *See Buddin,* 250 S.C. at 338, 157 S.E.2d at 635; *Coriasco v. Hutchcraft,* 245 Ill.App.3d 969, 185 Ill.Dec. 769, 615 N.E.2d 64, 65 (1993) (stating the phrase "resident of the household" has no fixed or exact meaning); *Pierce v. Aetna Cas. & Sur. Co.,* 29 Wash.App. 32, 627 P.2d 152, 154 (1981) ("The phrase 'residents of the same household' has no fixed meaning but varies according to the circumstances of the case."). The decisions of other courts on this issue have resulted from the application of the facts in the cases before them to a variety of factors.[6]

---

6. The insurance policies discussed in most of the following cases in the remainder of this opinion usually provide coverage for a named insured and his or her relatives or family members. The broad issue in each case centers on whether a child is an insured under a parent's insurance policy. The terms "relatives" and "family members" are consistently defined in the insurance policies as "a resident of the same household" as the named insured. The present case is distinguishable because the policy issued to Mrs. Horne does not define a "relative" or

In *Countryside Cas. Co. v. McCormick*, 722 S.W.2d 655 (Mo.Ct.App.1987), the court of appeals affirmed the trial court's decision in a declaratory judgment action that a child was a resident of her father's household, even though her mother had been granted custody. The appellate court found that an aggregate of the following factors tended to support the trial court's finding: (1) the child's age; (2) the proximity of the divorced parents; (3) whether reasonable visitation rights had been awarded under the divorce decree; (4) currency of child support payments; (5) the relationship between the parent and the child; (6) whether the child had a separate bedroom and wardrobe; and (7) the frequency of visitation. *Id.* at 658. The court also noted that the most significant factor in determining residence is custody, but that other factors affect the determination, including periods of residence with the parent and substantial support from the parent. *Id.* at 657; *accord Garrison v. Travelers Ins. Co.*, 261 N.J.Super. 209, 618 A.2d 387 (Law Div.1992) (recognizing and applying the factors discussed in *Countryside* to find that a nine-year-old was a resident relative of her non-custodial father's household; the child visited her father every other weekend and for extended periods over school holidays in the five months prior to the child being struck by an underinsured automobile).

An Illinois court held that the determination of residency in each case includes an analysis of intent, physical presence, and permanency of abode. *Coriasco*, 185 Ill.Dec. 769, 615 N.E.2d at 65; *see Country Mut. Ins. Co. v. Watson*, 1 Ill.App.3d 667, 274 N.E.2d 136, 138 (1971) ("The elements required beyond physical presence are intention and permanency of abode."). The court applied the facts of the case to these factors and found a minor child to be a resident of her father's household. The child's parents had divorced and custody had been awarded to the mother. The child "resided with her mother except for visitation with her father which occurs principally on

---

a "family member." However, this is of no consequence because we are not concerned with the definition of either term under an insurance policy. Our inquiry focuses on whether Crystal is a resident of the Horne's household based on statutory and common law concepts of stacking. The following cases are nonetheless instructive given the policy language in the cases is so similar to our notion of a Class I insured as being a resident relative of the same household as the named insured.

weekends and occasionally during the week." *Coriasco,* 185 Ill.Dec. 769, 615 N.E.2d at 66. The child also kept clothing and personal items at her father's house and had occasionally received mail there.

In another case, a seventeen-year-old son was found not to be a resident relative of his father's household. *Gulf Am. Fire & Cas. Co. v. Azar,* 364 So.2d 332 (Ala.Civ.App.1978). At the time of an accident involving an uninsured motorist, the son had been living with his mother for three months pursuant to the custody arrangements of a divorce decree. The son had visited at his father's home but had not spent the night there. "As these facts indicate, neither [the son's] actual or legal residence was in his father's household." *Id.* at 334.

In a North Carolina declaratory judgment action to determine a minor child's entitlement to uninsured motorist coverage under her father's insurance policy, the court held "the evidence discloses that there existed between the father and the minor plaintiff a continuing and substantially integrated family relationship." *Davis v. Maryland Cas. Co.,* 76 N.C.App. 102, 331 S.E.2d 744, 747 (1985). The court pointed to the child's frequent overnight stays with her father, the provisions made for the keeping of the child's clothes, personal property, and furniture, and the father's support and health-care obligations pursuant to a separation agreement. *Id.* at 745. In addition, the court noted that for insurance purposes a child is not a resident of one parent's household to the exclusion of the other, but could be a resident of both households. *Id.* at 746; *see also Hartford Cas. Ins. Co. v. Phillips,* 575 S.W.2d 62 (Tex.Civ.App.1978) (affirming jury's finding that a fourteen-year-old living with his father was still a resident relative of his mother's household and pointing out that a finding of residency in one household does not necessarily foreclose that person being a resident of another household).

The Washington Court of Appeals listed four factors to consider in addressing whether a child is a resident of a household: "(1) the intent of the departing person, (2) the formality or informality of the relationship between the person and the members of the household, (3) the relative propinquity of the dwelling units, and (4) the existence of another place of

lodging." *Adams v. Great Am. Ins. Cos.*, 87 Wash.App. 883, 942 P.2d 1087, 1090 (1997) (quoting *Pierce v. Aetna Cas. & Sur. Co.*, 29 Wash.App. 32, 627 P.2d 152, 155 (1981)). Interestingly, the court then went on to frame the question as follows for cases of this type:

> Does the child regularly spend time in the household in question, such that there exists a continuing expectation of the child's periodic return on intervals regular enough that the household is the child's home during the time the child is there, as opposed to a place of infrequent and irregular visits.

*Adams*, 942 P.2d at 1091.

In *Midwest Mut. Ins. Co. v. Titus*, a Colorado court focused on intent and stated a "[c]onsideration of all relevant circumstances must reveal 'some intended presence in the insured's home.'" *Midwest Mut. Ins. Co. v. Titus*, 849 P.2d 908, 910 (Colo.Ct.App.1993) (quoting *Wheeler v. Allstate Ins. Co.*, 814 P.2d 9, 10 (Colo.Ct.App.1991)). The court listed the factors it would take into account in determining whether an individual is a resident of a household to include the "subjective or declared intent of the individual, the relation between the individual and the members of the household, the existence of a second place of lodging, and the relative permanence or transient nature of the individual's residence in the household." *Midwest*, 849 P.2d at 910. The child's status as a minor is just one factor to be considered. *Id.* The court also recognized that a child of divorced parents is a resident of the household in which she actually lives but the child may reside in more than one household. *Id.*

In another case focusing on intent, the Rhode Island Supreme Court stated the test for residency as follows:

> In order to determine if a person is a resident of a particular household, the court must consider whether in the totality of the circumstances that person maintains a physical presence in the household with the intent to remain there for more than a mere transitory period, or that person has a reasonably recent history of physical presence together with circumstances that manifest an intent to return to the residence within a reasonably foreseeable period.

*Barricelli v. Am. Universal Ins. Co.*, 583 A.2d 1270, 1271 (R.I.1990) (quoting *Aetna Life & Cas. Co. v. Carrera*, 577 A.2d 980, 985 (R.I.1990)). In *Barricelli*, custody of a minor daughter had been granted to her mother. The daughter lived with her mother for four years and then permanently moved in with her father. The custody decree was not judicially modified. The daughter received her own room in her father's home, registered for and attended school from the father's home, received mail there, and kept most of her personal belongings and clothing there. The father claimed the daughter as a dependent on his tax returns. The daughter "maintained a structured, albeit intermittent, relationship" with her mother "although it remained necessary for [the daughter] to pack a suitcase to stay with her mother on the alternate weekends." *Id.* at 1271. The court held the totality of the circumstances showed the impermanence of the daughter's physical presence in her mother's household and failed to establish the daughter's visits to her mother's home were for anything more than a transitory period. *Id.* at 1272.

In *Herbst v. Hansen*, 46 Wis.2d 697, 176 N.W.2d 380, 384 (1970), the court stated the test for whether a person remains a member of a household is whether the person has intent to return. In this case, the mother had been granted custody of a ten-year-old child pursuant to a decree of legal separation. The issue was whether the child could be considered a resident of the same household as his father under the father's insurance policy. The court found the father's continued support and visitation, coupled with the parents' chances for reconciliation, precluded granting summary judgment in favor of the father's insurance carrier given the facts supported a finding that the father's absence was only temporary. The court held if a party is not living under the "family roof" at the time in question then the absence of that party must be of a temporary nature with intent to return. *Id.* " 'Whether the absence from the household is of long or short duration is immaterial except as it may give rise to an inference of intent to remain away permanently or only temporarily.' " *Id.* (quoting *Doern v. Crawford*, 30 Wis.2d 206, 140 N.W.2d 193, 196 (1966)); *see also Ohio Cas. Ins. Co. v. Wittkopp*, 326 N.J.Super. 407, 741 A.2d 619, 622 (App.Div.1999) ("Absence from a

parent's home, even for several months, does not terminate the child's residency without additional factors.").

In *Elder v. Metro. Prop. & Cas. Co.*, 851 S.W.2d 557 (Mo.Ct.App.1993), a twenty-year-old son was held not to reside with his father for insurance purposes. The son contended he was an unemancipated minor and should be considered a resident of his father's household even though he lived with his mother on a permanent basis and his parents were separated and living apart. The court found the evidence suggested the son was not truly unemancipated since he was not attending secondary school or an institution of vocational or higher education. *Id.* at 561. Custody had been placed with the mother and the son had not stayed with his father in the two and a half years preceding the accident. The court stated custody was the most important factor in determining residency. *Id.* at 560. The court also stated "[r]esidence is a matter of intention and depends on a person's physical location." *Id.* at 561; *cf. Amica Mut. Ins. Co. v. Donegal Mut. Ins. Co.*, 376 Pa.Super. 109, 545 A.2d 343 (1988) (holding residence in a household under the policy in question was a matter of physical fact and not intention).

█ As evident from these cases, there is no single test to determine whether a minor child is a resident of a noncustodial parent's household for purposes of determining UIM benefits. Rather, the courts generally look at the facts and circumstances of each case in totality to determine the child's residency. In this case, the record supports the referee's conclusion that Crystal was not a resident relative of the Horne's household.

In support of their contention that Crystal was a resident relative, the Hornes cite the following evidence: (1) Crystal's visits were planned, coordinated, and expected; (2) Crystal received mail at her father's address; (3) Crystal's custodial setting was established pursuant to the 1988 divorce decree; (4) the Hornes maintained a room prepared with furniture, lamps, and a trash can they purchased and designated for Crystal's use when she was with them; (5) Crystal kept clothes, toiletries, and other items at the Hornes' house; (6) Crystal ate meals with and prepared by Mr. Horne; (7) Crystal washed clothes at the Hornes' house; (8) Crystal had

unrestricted access to the entire house while she lived there and was not required to obtain permission before returning to the house; and (9) Mr. Horne maintained health insurance for Crystal and was current on child support payments. The Hornes argue this evidence, especially the planned and coordinated nature of Crystal's visits, demonstrates residency and show Crystal "had every intent to continue the relationship with her father without ever considering ending it." The special referee noted the evidence established Crystal had a close relationship with Mr. and Mrs. Horne but it did not translate into a finding that Crystal was a resident of their household. *See Griffith v. Sec. Ins. Co. of Hartford,* 167 Conn. 450, 356 A.2d 94, 96 (1975) (stating evidence indicating a close paternal relationship does not necessarily support an additional finding that the parties are members of the same household).

Crystal's parents divorced in 1988 and sole custody had been granted to Williams. Crystal moved with Williams to Conway in 1992 and they have resided there since that time. Mr. and Mrs. Horne have remained in the Saluda/Greenwood area. In the year prior to the accident Crystal had stayed with her father on a maximum of three occasions, for a total of approximately fourteen days, but at the time of the accident Crystal had not visited her father for over three months.[7] Crystal, however, could not testify with any certainty whether she had visited her father during the 1996 Thanksgiving holiday.

Crystal did not maintain everyday clothes or other possessions at her father's house. If any items had been left behind or forgotten at her father's house, such as clothes or cosmetics, it was because Crystal did not need the items or did not use them anymore. Any mail Crystal may have received at her father's house came only from her mother. Crystal's

---

7. The three occasions in 1996 included a few days in the summertime, Thanksgiving, and Christmas. The Hornes dispute the referee's finding of fourteen days, arguing Crystal spent a weekend with her father approximately one month before the accident. However, the Hornes point to an isolated portion of Crystal's stepbrother's testimony for this proposition. In context, her stepbrother's testimony refers to Crystal's visits on the weekends before Crystal moved to Conway in 1992. Even assuming sixteen days were correct, the two-day difference would not affect our analysis.

healthcare providers were located in Conway and Crystal's driver's license listed her address as her mother's home. Williams claimed Crystal as a dependent on her tax return.

Crystal was seventeen years old at the time of the accident and worked full-time at a Burger King restaurant close to her home in Conway. She was scheduled to work on the day after the accident. Crystal began spending significantly less time with her father once she quit school in 1996 after her ninth-grade year and began working at Burger King. Crystal spent only a few days in Saluda during the summer of 1996 and did not spend the entire summer as she had in previous years. Mr. and Mrs. Horne admitted Crystal's visits became less frequent through the years. When Crystal started working, the pattern of visitation changed, and she did not visit unless she had time off from work. However, Crystal had time off from her job at Burger King the weekend before the accident but she did not leave the Conway/Myrtle Beach area.

Crystal packed a suitcase when she traveled to Saluda and spent the night with other family members besides her father during her visits. Sometimes Crystal would visit her other relatives before going to her father's house. During her four- or five-day stay in Saluda over the Christmas holiday before the accident, Crystal spent nights with her two aunts and her grandmother. Crystal shared a room at her father's house with her sister. Moreover, Crystal's stepsister also used the bedroom when she would visit her mother, Mrs. Horne. The stepsister did not have to ask Crystal for permission to use the bedroom. Crystal had unrestricted access to her father's house when she was there but her father required her to call before she visited so he would know she was coming and Crystal never just "showed up."

The special referee properly found Crystal was not a resident relative of her father's household. The evidence in the record reasonably supports his decision and is not "reasonably susceptible of the opposite conclusion only." *Hiott*, 329 S.C. at 529, 496 S.E.2d at 421. We agree with the referee that while Crystal had a close relationship with her father and stepmother, she was not a resident of their household. Crystal's short, infrequent visits to Saluda, scattered with her overnight stays with other relatives, demonstrate the transient nature of

Crystal's residence in her father's household. *Buddin*, 250 S.C. at 339, 157 S.E.2d at 636; *Midwest*, 849 P.2d at 910. Crystal could visit Saluda only when she was able to get off of work. Her work schedule at the time of the accident precluded an expectation of Crystal's return to the home with any regularity. Any personal items left at her father's home do not indicate an intent to return there with any regularity given the items were either forgotten or were not needed any longer. In some respects, Crystal had even less contacts with her father's household than did the daughter in *Richardson*, 336 S.C. at 237, 519 S.E.2d at 122–23 (finding the daughter was not a resident of her father's household even though she kept furniture and an exercise bike at her father's home and usually visited her parents once a month for three or four days at a time). The circumstances present in this case do not manifest Crystal's intent to return to her father's household within a reasonably foreseeable period or her intent to remain there for more than a transitory period. *Barricelli*, 583 A.2d at 1271.

## CONCLUSION

Accordingly, because Crystal was not a resident relative of the named insured's household, she was not a Class I insured entitled to stack UIM benefits. *See Concrete Servs.*, 331 S.C. at 509, 498 S.E.2d at 866 ("The right to stack is available only to a Class I insured."). The special referee's judgment is

**AFFIRMED.**[8]

HEARN, C.J., and STILWELL, J., concur.

---

8. The Hornes also urge this Court to hold that a minor unemancipated child can be a resident of two households. *See, e.g., Davis v. Maryland Cas. Co.*, 76 N.C.App. 102, 331 S.E.2d 744, 746–47 (1985) (stating it is not required that a minor be a resident of one parent's household to the exclusion of the other and that a minor could be a resident of two separate households). We need not specifically rule on this issue given the facts in this case do not demonstrate Crystal resided in her father's household. However, implicit in this decision is the recognition that a child of divorced parents may be a resident of two households given Crystal is surely a resident of her mother's household. *Cf. Cook v. Fed. Ins. Co.*, 263 S.C. 575, 582, 211 S.E.2d 881, 884 (1975) ("A person may have only one domicile, but may have several residences.").